PARRO, J.
lijRon A. Austin (Austin) and Austin & Associates, L.L.C. (the Austin firm) appeal a judgment dividing attorney fees on a quantum meruit basis between the Austin firm and Jennifer M. Medley (Medley). For the following reasons, we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
In November 2009, attorneys Robert M. Johnston, with the office of Robert M. Johnston, L.L.C., and Michael Hingle, with the office of Michael Hingle & Associates, L.L.C. (collectively referred to as the Hin-gle group), filed a medical malpractice case on behalf of their client, Jane LeBlanc. Before filing suit, LeBlanc had entered into a contingency fee arrangement with the Hingle group. In early 2011, LeBlanc became dissatisfied with the performance of her attorneys and discussed her case with Medley. Medley was associated with the Austin firm at that time, and she arranged a meeting between LeBlanc and Austin to discuss the case. Following that meeting, LeBlanc discharged the Hingle group and on June 15, 2011, signed a contingency fee contract naming Medley and the Austin firm as her attorneys.
On August 15, 2011, LeBlanc’s malpractice case went to a mediation that was conducted by Austin and Medley. As a result of the mediation, the defendants agreed to a $300,000 settlement. Medley reached an agreement with the Hingle group that they were to receive two-thirds of the 40% contingency fee, specifically, $80,000, plus expenses, and she would receive one third of the 40% contingency fee, specifically, $40,000. However, Austin had not authorized this agreement, and it was inconsistent with a conversation between Austin, Medley, and LeBlanc at the mediation, purportedly advising that the Austin firm would lower its contingency fee to 33-1/3% and would try to get the Hingle group to do the same, resulting in a greater recovery for LeBlanc. At this point, *3 Austin and the Austin firm terminated their relationship with Medley, and Le-Blanc also fired her. On September 19, 2011, LeBlanc signed another contingency fee agreement that named only Austin and the Austin firm as counsel, omitting Medley’s name from the agreement. Because the attorneys disagreed on the distribution of the attorney fees called for in the three contingency fee contracts, the amount of $120,000 |sin attorney fees, plus $23,852.42 in expenses incurred by the Hingle group,[1] was deposited in the registry of the court.
Austin and the Austin firm filed an intervention in the lawsuit to recover their attorney fees, naming the Hingle group and Medley as defendants-in-intervention and asking that any damages recovered by LeBlanc be apportioned so that the inter-venors’ claim for legal services, costs, and expenses would take precedence over the plaintiffs recovery. The Hingle group also filed a petition of intervention and a supplementary and amending petition of intervention, naming Medley and Austin as defendants-in-intervention and seeking enforcement of the contract that they had negotiated with Medley. Medley, Austin, the Austin firm, and the Hingle group eventually agreed that the Hingle group was entitled to $80,000, plus $23,852.42 in expenses, and these amounts were paid to the Hingle group. The only remaining dispute was between Medley and the Austin firm as to the distribution of the $40,000 still on deposit in the registry of the court.
Medley filed a motion for summary judgment, claiming that, as of early May 2011, she was an independent contractor, of counsel to the Austin firm, and was no longer an employee of the Austin firm when LeBlanc agreed to hire her to handle the malpractice case. She contended that Austin and the law firm had no legitimate claim to an attorney fee in the case or, in the alternative, that any such fee be limited by quantum meruit. Austin and the Austin firm opposed the motion, claiming Medley was at all relevant times an employee of the firm, was paid a salary, and was entitled to only 10% to 35% of the collected fee if she was the originating attorney and did substantial work on a case. They based these percentages on two standard contracts used by the law firm when associating an attorney; no signed contracts between LeBlanc and Austin or the Austin firm were submitted into evidence. Finding there were genuine issues of material fact, the court denied the motion.
A concursus trial was held on August 15, 2012, after which the court took the case under advisement. In reasons for judgment, the court reviewed the evidence and concluded that Medley was an employee of the Austin firm from April 1, 2011, when |4she was hired, until August 16, 2011, when she was terminated. However, there was no signed, written contract setting forth the terms of her employment, nor was there a meeting of the minds as to the terms of her compensation. Accordingly, the court concluded that she should be paid on a quantum meruit basis. Applying the factors set forth in the Louisiana State Bar Association Rules of Professional Conduct, Rule 1.5, the court concluded that Medley was entitled to $23,500, and Austin and the Austin firm were entitled to $16,500. A judgment to this effect was signed November 5, 2012.
Austin and the Austin firm filed a sus-pensive appeal from this judgment. In *4 their assignment of error, they state the trial court erred in awarding attorney fees to Medley, Austin’s employee, based on Austin’s intervention in these proceedings to enforce his and his firm’s attorney fee lien on the proceeds of the settlement.
APPLICABLE LAW
A court of appeal may not overturn a judgment of a trial court unless there is an error of law or a factual finding that is manifestly erroneous or clearly wrong. Morris v. Safewav Ins. Co. of Louisiana, 03-1361 (La.App. 1st Cir.9/17/04), 897 So.2d 616, 617, writ denied, 04-2572 (La.12/17/04), 888 So.2d 872. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). See Mart v. Hill. 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Moss v. State, 07-1686 (La.App. 1st Cir.8/8/08), 993 So.2d 687, 693, writ denied, 08-2166 (La.11/14/08), 996 So.2d 1092. If the trial court’s factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings, even though convinced that, had it been sitting as the trier of Ififact, it would have weighed the evidence differently. Smegal v. Gettys, 10-0648 (La.App. 1st Cir.10/29/10), 48 So.3d 431, 435.
With regard to questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Hidalgo v. Wilson Certified Exp., Inc., 94-1322 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. In re Mashburn Marital Trust, 04-1678 (La.App. 1st Cir.12/29/05), 924 So.2d 242, 246, writ denied, 06-1034 (La.9/22/06), 937 So.2d 384.
ANALYSIS
The trial court made a factual finding that Medley was an employee of Austin and the Austin firm from April 1, 2011, when she was hired, until August 16, 2011, when she was terminated. As with any factual finding, this conclusion is reviewed under the manifest error standard. In written reasons for judgment, the trial court stated:
The evidence established that on or about April 1, 2011[,] Ms. Medley was hired by the Austin law firm. She was paid bi-monthly subject to state and federal withholding taxes, beginning April 16 through August 15, 2011. She was issued a W-2 for her compensation, assisted by office personnel and provided with a private office, other office supplies, administrative services and costs associated with her employment. On or about August 16, 2011 [,] Ms. Medley’s employment relationship with the law firm was terminated. After considering the evidence and testimony, the Court finds that there was a mutual intent to enter into an employment contract be *5 tween Ms. Medley and Mr. Austin on behalf of the Austin law firm on or about April 1, 2011, and the agreement remained in effect through August 15, 2011.
Having reviewed the evidence, which includes copies of Ms. Medley’s payroll records, as well as testimony from the Austin firm’s office manager, Cynthia Coleman, from Austin’s paralegal, Debra Preston, from Austin, and from Medley, we conclude there was a reasonable factual basis for the court’s finding of fact that Medley was an employee of the Austin firm when the contingency fee contract with LeBlanc was signed on June 15, 2011, and continued through the date when the settlement was confected on August 15, 2011. Moreover, our review of the entire record does not reveal that this finding was clearly wrong.
The issue then is whether Medley, as an employee of the Austin firm, had a legal [ aright to a quantum meruit allocation of the attorney fee sought by the Austin firm in connection with the LeBlanc case, which she originated and worked on. Louisiana Revised Statute 37:218(A) states, in pertinent part:
By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws.
In order for an attorney to claim a contingency fee, the attorney must have a written contingency fee contract with the client. See Dereyna v. Pennzoil Exploration, 04-0097 (La.App. 3rd Cir.8/4/04), 880 So.2d 124, 127, writ denied, 04-2261 (La.11/19/04), 888 So.2d 197. Rule 1.5(c) of the Louisiana State Bar Association Rules of Professional Conduct states, in pertinent part, “A contingent fee agreement shall be in a writing signed by the client.” State Bar Articles of Incorporation, Art. 16, Rules of Prof. Conduct, Rule 1.5(c).
Medley contends that she had a valid contingency fee contract with LeBlanc, thus entitling her to claim a portion of the contingency fee from the Austin firm. She said that for the cases she originated after May 2011, she used a revised form of the Austin firm’s standard contract, which included her name as “of counsel” to the Austin firm. Austin testified that after LeBlanc verbally agreed to hire the Austin firm to represent her, he asked Medley to take care of having a contingency fee contract executed. The document signed by Medley and LeBlanc was a revised version of the Austin firm’s standard contingency fee contract. In four places, this contract named “JENNIFER M. MEDLEY, Attorney at Law, Of Counsel with the law firm of AUSTIN & ASSOCIATES, L.L.C.,” as LeBlanc’s attorney in connection with the malpractice suit. However, the agreement also stated that LeBlanc retained “JENNIFER M. MEDLEY, Attorney at Law, Of Counsel and the law firm of AUSTIN & ASSOCIATES, L.L.C.” to represent her. (Emphasis added). Medley and LeBlanc were the only signers on this contingency fee contract.
In the Dereyna case, an attorney was employed by a law firm for twelve years. He was paid a percentage of the fees earned in the cases he handled, with the 17percentage varying from time to time and from case to ease. The law firm paid all of the expenses and overhead. The attorney and the law firm never entered into a written agreement and had only a loose verbal understanding of their relationship. *6 Eventually, the relationship deteriorated, and a fee dispute arose concerning a substantial settlement in a ease the attorney had worked on. Both the attorney and the law firm intervened in the lawsuit for all or part of the attorney fee specified in the contingency fee agreement with the client. The court held that the attorney had no right of action, because he was an employee of the firm and did not have a contingency fee contract with the client; the contingency fee contract was only with the law firm. However, the court also stated that its decision that the attorney had no right to intervene in the client’s suit did not preclude the attorney from claiming a portion of the fee from the law firm on the basis of quantum meruit or unjust enrichment. Dereyna, 880 So.2d at 129.
This case differs from the Dereyna case, in that Medley did not intervene in Le-Blanc’s case to enforce her claim to a portion of the contingency fee out of the client’s recovery. She merely responded to the intervention filed by Austin and the Austin firm, claiming that she was entitled to some portion of the fee, based on her origination of the case and the amount of work she had done in preparing for the mediation, communicating with LeBlanc and the Hingle group, and drawing up the settlement documents. At all times, her claim was against Austin and the Austin firm. Also, unlike the Dereyna case, the contingency fee contract executed by Le-Blanc on June 15, 2011, purported to engage the services of both Medley and the Austin firm to handle the malpractice litigation. We conclude, therefore, that under the unique circumstances of this case, the court did not err in allocating the attorney fee between Medley and the Austin firm on a quantum meruit basis.[2]
CONCLUSION
For the above reasons, the November 5, 2012 judgment is affirmed. All costs of this appeal are assessed to Austin and the Austin firm.
AFFIRMED.

. The Austin firm had already been paid the costs it had incurred; Medley did not claim any costs.

. Austin and the Austin firm did not appeal the amount of the award allocated between them and Medley.