PARRO, J.
IsKevin Maddox appeals a judgment rendered in accordance with a jury verdict, awarding him damages for certain injuries he sustained as the result of a rear-end collision. He seeks additional general and special damages. For the following reasons, we amend the judgment and affirm as amended.
FACTUAL AND PROCEDURAL BACKGROUND
On September 20, 2010, Maddox was driving southbound on Airline Highway in Baton Rouge on his way home from work. He stopped behind several other vehicles at a red light near the entrance to Hammond Aire Shopping Center. When the light turned green, he lifted his foot from the brake, but had not yet put his foot on the accelerator when his vehicle was struck from behind by a truck driven by Patricia Bailey. For over a year following the accident, Maddox was treated for neck, lower back, and left shoulder pain.
On February 18, 2011, Maddox filed suit against Bailey; her employer, Diesel Specialists, Inc. (Diesel); and Diesel’s insurer, 21st Century National Insurance Company (21st Century). Maddox claimed that Bailey was within the course and scope of her employment with Diesel when the accident occurred; that Diesel was insured by 21st Century under a general automobile liability policy; and that the accident was caused solely by the fault of Bailey. He sought damages for his mental and physical pain and suffering, as well as lost wages and past and future medical expenses caused by the accident. The defendants answered and moved for a trial by jury. A jury trial was held on July 30 and 31, 2012, after which the jury returned a verdict in favor of Maddox, awarding him the following damages:
*593 Past medical expenses: $28,570.97
Past and future physical pain and suffering 3,000.00
Past and future mental pain and suffering 3,000.00
Loss of enjoyment of life 2,000.00
The amount awarded for past medical expenses completely omitted the cost of treatment for an injury to Maddox’s left shoulder, which required epidural steroid ^injections, arthroscopic surgery, and physical therapy. On October 4, 2012, the trial court signed a judgment in accordance with the jury’s verdict, ordering the defendants to pay Maddox $36,570.97. Maddox filed a motion for a judgment notwithstanding the verdict or, in the alternative, motion for a new trial and/or additur, seeking additional damages for the injury to his left shoulder. The motion was denied by the trial court, and this appeal of the October 4, 2012 judgment followed.
Maddox claims on appeal that the trial court committed legal error by permitting “trial by ambush,” in that, over his objection, the court allowed defendants’ expert, Dr. Lawrence Messina, to testify to a new theory concerning Maddox’s left shoulder condition, which was contrary to what he had stated in his deposition just two weeks prior to trial and which had not been revealed to plaintiffs counsel before trial. Because this legal error interdicted the jury’s findings to his detriment, Maddox asks this court not to consider Dr. Messi-na’s testimony and to award damages based on a de novo review of the record. Finally, even if Dr. Messina’s testimony is considered, Maddox contends the jury award was abusively low and asks this court to correct it.
APPLICABLE LAW

Standard of Review

A court of appeal may not overturn a judgment of a trial court unless there is an error of law or a factual finding that is manifestly erroneous or clearly wrong. Morris v. Safeway Ins. Co. of Louisiana, 03-1361 (La.App. 1st Cir.9/17/04), 897 So.2d 616, 617, writ denied, 04-2572 (La.12/17/04), 888 So.2d 872. The Louisiana Supreme Court has posited a two-part test for the appellate review of facts in order to affirm the factual findings of the trier of fact: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only |4if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See Stobart v. State, through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Moss v. State, 07-1686 (La.App. 1st Cir.8/8/08), 993 So.2d 687, 693, writ denied, 08-2166 (La.l1/14/08), 996 So.2d 1092. If the trial court’s factual findings are reasonable in light of the record reviewed in Its entirety, the court of appeal may not reverse those findings, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. LeBlanc v. Appurao, 13-0491 (La.App. 1st Cir.2/13/14), 138 So.3d 1, 2. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be *594 disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable. Robinson v. North American Salt Co., 02-1869 (La.App. 1st Cir.6/27/03), 865 So.2d 98, 105, writ denied, 03-2581 (La.11/26/03), 860 So.2d 1139. Where there are two permissible views of the evidence, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Dubuisson v. Amclyde Engineered Products Co., Inc., 12-0010 (La.App. 1st Cir.12/31/12), 112 So.3d 891, 895.
With regard to questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect Hidalgo v. Wilson Certified Exp., Inc., 94-1322 (La.App. 1st Cir.5/14/96), 676 So.2d 114, 116. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. In re Mashburn Marital Trust, 04-1678 (La.App. 1st Cir.12/29/05), 924 So.2d 242, 246, writ denied, 06-1034 (La.9/22/06), 937 So.2d 384.

Expert Testimony

Admissibility of expert testimony in Louisiana is governed by Louisiana Code of Evidence article 702, which provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
A district court is accorded broad discretion in determining whether expert testimony | ¿should be held admissible and who should or should not be permitted to testify as an expert. Cheairs v. State ex rel. Dep’t of Transp. and Dev., 03-0680 (La.12/3/03), 861 So.2d 536, 540-41. The district court’s decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. Medine v. Roniger, 03-3436 (La.7/2/04), 879 So.2d 706, 711.
Louisiana Code of Evidence article 103(A) provides that error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. LSA-C.E. art. 403. In reviewing evidentiary decisions of the trial court, the appellate court must consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complainant’s cause, for unless it did, reversal is not warranted. Brumfield v. Guilmino, 93-0366 (La.App. 1st Cir.03/11/94), 633 So.2d 903, 911, writ denied, 94-0806 (La.05/06/94), 637 So.2d 1056. The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Id. Legal errors are prejudicial when they materially affect the outcome of the trial and deprive a party of substantial rights. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 735. When a legal error interdicts the fact finding process, the manifest error standard no longer applies. If the record is otherwise complete, the reviewing court should conduct a de novo review. Landry v. Bellanger, 02-1443 (La.5/20/03), 851 So.2d 943, 954.

Duty to Supplement Discovery Response

Louisiana Code of Civil Procedure article 1428(A) states, in pertinent part:
A party who has responded to a request for discovery with a response that was complete when made is under no *595 duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
|fi(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which he knows that the response was incorrect when made, or he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment. (emphasis added).
In Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Co., 555 So.2d 568, 576 (La.App. 1st Cir.1989), writ denied, 558 So.2d 583 (La.1990), this court noted that a “survey of relevant Louisiana cases revealed a judicial concern for maintaining a fair give-and-take of information between litigants.” The trial judge has great discretion in deciding whether to receive or refuse the testimony objected to on the grounds of failure to abide by the statutory mandate, but any doubt must be resolved in favor of receiving the testimony. When a party has not satisfied the technicality of supplementing discovery responses, the reviewing court can look to the record for a willful or negligent failure to disclose new information in determining whether the trial judge abused his discretion. A party’s failure to cooperate after the discovery is made can color the final decision on admissibility. Id.; see also Lodrigue v. Houma-Terrebonne Airport Comm’n, 450 So.2d 1004,1006-07 (La.App. 1st Cir.1984).
ANALYSIS
At trial, Maddox’s treating physician, Dr. F. Allen Johnston, a board certified orthopedic surgeon, stated that during his 27 years of practice, he had performed “hundreds if not thousands” of shoulder surgeries. He testified that Maddox came to his office for his initial visit on September 30, 2010, just ten days after the accident, complaining of pain in three areas— the neck, lower back, and shoulders. After conducting an examination, Dr. Johnston believed that Maddox possibly had a pinched nerve in his neck that was causing the pain in his left shoulder and arm; he prescribed a conservative course of treatment, including physical therapy, anti-inflammatory medications, pain medications, and muscle relaxers. Because the left shoulder pain did not abate after several months, on December 14, 2010, Dr. Johnston injected the shoulder with cortisone and ordered an MRI. The MRI of the left shoulder suggested a torn rotator cuff, and Dr. Johnston recommended arthroscopic surgery to the shoulder to confirm the tear and fix it. Maddox was hesitant to have the surgery, so Dr. |7Johnston tried to relieve the pain with epidural steroid injections. When this failed, on June 14, 2011, Dr. Johnston performed the surgery. During the surgery, Dr. Johnston discovered that Maddox had a tear of the lab-rum; “the labrum was detached.” He repaired the condition by re-attaching the labrum to the glenoid or bony socket with a screw as an anchor. Dr. Johnston said the surgery was successful, and that he had not seen Maddox since December 2011. He stated that there was no doubt in his mind that the labral tear in Maddox’s left shoulder was caused by the accident.
*596 The following day, the defense began to put on its case, calling as its second witness Dr. Lawrence Messina, who was accepted by the court as an expert in orthopedic surgery. Maddox did not and does not object to the credentials of Dr. Messi-na or his qualifications in the field of orthopedic surgery. However, when Dr. Messina began testifying at trial, Maddox’s counsel learned for the first time that Dr. Messina had developed a totally new theory concerning Maddox’s left shoulder, a theory that was drastically different from deposition testimony he had given just two weeks earlier. In his deposition, Dr. Messina had opined that Maddox’s left shoulder problem was not caused by or related to the rear-end collision, because Dr. Johnston’s notes did not show specific complaints about pain in the left shoulder until several months after the accident, on December 14, 2010. Dr. Messina stated in his deposition that if the accident had caused a rotator cuff tear or torn labrum in the left shoulder, Maddox would have complained of pain and limitation of motion immediately and continuously after the accident. Since Dr. Messina’s review of Maddox’s medical records had not revealed such complaints of left shoulder pain, he concluded that the accident had not caused the problem. Based on this deposition, Maddox’s attorney prepared to show during cross-examination at trial that records from Maddox’s physical therapy, which began within a month after the accident,[1] showed that on virtually every visit, Maddox had complained of unremitting left shoulder pain. This information from Maddox’s physical therapy records would have undercut Dr. Messina’s basis for his opinion.
However, during his trial testimony, Dr. Messina did not rely on this time delay ^between the accident and onset of pain to substantiate his opinion. Rather, he stated that, after reviewing Dr. Johnston’s operative report again, he had concluded that Maddox’s left shoulder did not have any labral abnormality at all. Instead, he opined that Maddox had a congenital condition called a “Buford complex,” which is a “normal anatomic variant that we see in the shoulder. It doesn’t cause pain and it can’t be confused for a labral abnormality.” Dr. Messina referred to several textbooks in which there were drawings of a “Buford complex,” and stated that those showed “just exactly what Dr. Johnston describe[d]” in his operative report. Though defense counsel had not seen the reference books and articles discussed by Dr. Messi-na, he knew that Dr. Messina had altered his opinion concerning the left shoulder, yet had not told Maddox’s counsel of that information and had not revised his discovery response.
Upon hearing this theory from Dr. Messina, Maddox’s counsel sought a bench conference, at which he stated to the court:
We sent discovery to [defense counsel] asking for a copy of all exhibits. When Dr. Messina’s deposition was taken two weeks ago, we asked him what treatises he was going to be consulting, and he gave us one, none of this stuff. I object to this.... This is completely [beyond] the pale, so I’m going to object to this whole line of questioning and ask to strike it and ask [defense counsel] to move off of this.
[[Image here]]
Dr. Messina’s deposition, this deposition was taken last week, two weeks ago. I mean, this is all last-minute stuff. They’re trying to catch us by surprise. How am I supposed to cross-examine *597 something I’ve never seen before? I’m getting it for the first time sitting over here. I mean, it’s just inherently unfair. ...
Defense counsel agreed not to offer the reference books as exhibits, at which point, Dr. Messina’s testimony was limited by the court to a verbal explanation of the “Buford complex.” Dr. Messina then said that Dr. Johnston had not repaired a torn lab-rum during surgery, but that “he sewed the Buford complex down to the anterior portion of the glenoid. The operative report is pretty clear.” Dr. Messina stated that the operative report did not detail a number of steps that could have been taken to determine whether the problem was actually a torn labrum or a “Buford complex,” explaining:
None of those things were done during Dr. Johnston’s arthroscopic examination. Certainly they weren’t indicated in his operative report. So, I don’t [know] how you could differentiate between what I interpreted looking at [this] as a Buford complex and a superior labral tear.
| ¡Although Maddox’s attorney had the opportunity to cross-examine Dr. Messina, there was no opportunity to re-call Dr. Johnston to the stand to rebut his testimony, and the case went to the jury with Dr. Messina’s opinion as the “last word” in evidence on the subject of Maddox’s left shoulder injury.
This court has examined a number of cases to determine whether there is a pattern that can be followed in analyzing whether certain expert testimony should have been disallowed by the trial court in order to ensure a fair trial. In Williams v. General Motors Corp., 93-0287 (La.App. 4th Cir.6/15/94), 639 So.2d 275, 288 (on rehearing), writ denied, 94-1898 (La.11/11/94), 644 So.2d 388, the Fourth Circuit concluded that the trial court erred by permitting the jury to receive evidence to prove a manufacturing defect in the rack and pinion steering assembly of the vehicle involved in the case, when the entire case had been premised on the existence of a design defect in the torsion bar as the cause of the accident. Williams had alleged in his petition a design defect in the torsion bar, and the case proceeded through discovery and the early stages of trial on the theory that this defect created problems with the steering wheel tension, causing the Buick to veer to the left out of control. At trial, the plaintiffs expert, Neil Mizen, testified that a defective torsion bar caused the accident, but revised his opinion on cross-examination to agree with General Motors’ defense that a design defect in the torsion bar would not have caused the Buick to malfunction in the manner the plaintiff had described. Id. On redirect examination, “almost as an afterthought, Williams’ counsel asked Mizen if there was any other possible defect that would have caused the accident, and it was only then that Mizen raised the possibility of a manufacturing defect in the rack and pinion steering assembly.” Id. at 288-89. In making its ruling, the Fourth Circuit stated:
General Motors spent five years researching its case to defend against allegations of a design defect in the torsion bar. Yet over General Motors’s objection, after a three day continuance, Williams was allowed to adopt a new theory of causation and to introduce evidence of an alleged manufacturing defect to support this new theory.... This type of unfair trial proceeding is prohibited by [LSA-]C.C.P. Article 1425, which declares that “the subject matter on which the expert is expected to testify, and ... the substance of the facts to which the expert is expected to testify” must be disclosed through interrogatories and depositions. Case law has in *598 terpreted this provision to “protect a party from prejudicial surprise at |intrial by the introduction of evidence not previously known by him to exist, and against which he could not therefore have prepared a rebuttal.”
[[Image here]]
[I]n this case the trial court erred by allowing the trial to proceed on a new issue which was brought up after three days of trial and for which there was no discovery and no opportunity for General Motors to prepare a defense. Although a trial judge has broad discretion in deciding whether it should permit expert testimony, the trial court erred by permitting the testimony under the circumstances and in the face of discovery articles designed to promote fair trials and to discourage “ambush”. The trial court should have excluded the evidence.
Id. at 289 (citations omitted).
In a case involving injuries received by a student in a fraternity hazing incident, the plaintiffs argued on appeal that the trial court erred in allowing the State’s vocational rehabilitation expert, Dr. Richard Galloway, to testify on the issue of the injured student’s loss of earning capacity. According to plaintiffs, Dr. Galloway should not have been allowed to change his opinion on the eve of trial to the prejudice of plaintiffs, based on his review of the student’s grade transcript from Louisiana Tech. Dr. Galloway testified that the student’s poor grades showed that he probably lacked the ability to achieve his stated goal of becoming a physical therapist. Morrison v. Kappa Alpha Psi Fraternity, 31,805 (La.App. 2nd Cir.5/7/99), 738 So.2d 1105, 1110-11, writs denied, 99-1668, 1607, and 1622 (La.9/24/99), 747 So.2d 1120, 749 So.2d 634, and 749 So.2d 635. The plaintiffs had strenuously resisted the State’s efforts to provide Dr. Galloway with the student’s grade transcript, although their own vocational rehabilitation expert had reviewed the transcript well in advance of trial. The trial court, on the Friday before trial, ordered production of the student’s college transcript. Id. at 1111. The court then allowed plaintiffs to depose Dr. Galloway just prior to his testimony to determine the effect, if any, his review of the transcript had on his opinion. The court also afforded plaintiffs an opportunity to have their experts testify on rebuttal. Id. On appeal, the Second Circuit concluded that the trial court had properly allowed Dr. Galloway’s testimony, noting that the plaintiffs had resisted the State’s efforts to provide Dr. Galloway with the student’s transcript, even though their vocational rehabilitation expert had a copy of the transcript. Therefore, any delay in the transcript’s production or change in Dr. Galloway’s opinion after his review was 11,caused by the plaintiffs. Moreover, plaintiffs were able to cross-examine Dr. Galloway and call their own experts back on rebuttal. Therefore, the trial court did not err in admitting his testimony. Id. at 1111-12.
In a slip and fall case, Shows v. Shoney’s, Inc., 98-1254 (La.App. 1st Cir.7/29/99), 738 So.2d 724, 730, this court held that the trial court had not abused its discretion in refusing to allow testimony from seven expert witnesses that Shoney’s named in a supplemental response to the plaintiffs discovery and in limiting Sho-ney’s medical defense to only one medical expert. Citing LSA-C.C.P. art. 1428, this court noted that the identities of any expert witnesses, as well as the subject matter and the substance of their testimony, were required to be supplied by way of supplementation of discovery responses, and that the duty to supplement responses could be imposed by order of the court. The trial court’s case management schedule established such an order by setting a *599 discovery cutoff date of December 10, 1997. As early as 1991, the plaintiff had asked for information from Shoney’s regarding the expert witnesses who were expected to testify at trial. Shoney’s knew of the plaintiffs claims and had ample opportunity to develop its medical defense and sufficient time to supplement its responses to the plaintiffs discovery request regarding expert witnesses prior to the December 10, 1997 deadline. Yet it did not supplement its responses until January 9, 1998, one month before trial. Despite this untimely response, the court ordered the plaintiff to submit to a last-minute independent medical exam and allowed one of Shoney’s expert witnesses to testify at trial regarding that exam. Therefore, this court concluded that Shoney’s was not prejudiced by the trial court’s decision to strike the other six expert witnesses. Id.
In an earlier case involving an automobile accident, Lodrigue, 450 So.2d at 1006, this court concluded that the trial court did not err in refusing to allow the plaintiffs’ expert to testify at trial. The defendants had propounded interrogatories to the plaintiffs on November 3, 1980, seeking information as to the identity of any expert whom plaintiffs intended to call as a witness. Plaintiffs’ initial response was that they were undecided as to whether an expert would be called. Trial was scheduled for | ^September 16, 1982, and the plaintiffs did not provide opposing counsel with their supplemental response, which included the name of an expert witness, until nine days before trial. Additionally, plaintiffs’ counsel was uncooperative in defendants’ request to depose the witness prior to trial. Citing LSA-C.C.P. art. 1428 and noting that the defendants were prejudiced in their discovery efforts by the plaintiffs’ failure to seasonably supplement their answers, the trial court refused to allow the testimony of the witness. Id. at 1006-07. Under these circumstances, this court found no abuse of discretion in the trial court’s ruling. Id. at 1007.
In Krepps v. Hindelang, 97-980 (La.App. 5th Cir.4/15/98), 713 So.2d 519, 527, the Fifth Circuit affirmed the trial court’s conclusion that the plaintiffs could not have their economic expert testify as to the injured party’s claim for lost wages, because the plaintiffs did not disclose the expert in interrogatories propounded by the defendants over two years before trial, did not indicate in their answers that an economic expert would be used at trial, did not supplement or amend their answers to those interrogatories, and disclosed the identity of the expert only in the pretrial order shortly before the trial date. In ruling that the plaintiffs’ economic expert could not testify at trial, the trial court stated:
[T]he listing of the witness in the pretrial order which comes shortly before the actual trial does not meet the requirements of the local rules, nor does it meet the court’s own requirements with respect to trial preparation.
Id. at 527. The appellate court stated it found no error in the trial court’s ruling, in that it was clear that the trial court made its decision based on the fact that the plaintiffs had failed to adequately respond to the interrogatories propounded by the defendants years before the trial and based on the plaintiffs’ failure to amend their answer. Id.
After reviewing the jurisprudence and comparing the above cases and others to the matter before us, we conclude that the trial court abused its discretion in allowing Dr. Messina to testify at trial to a totally different theory concerning Maddox’s left shoulder than he had expressed in his deposition just two weeks earlier. In the cases in which experts were not allowed to testify due to violations of LSA-C.C.P. art. *600 1428, the appellate courts generally noted that the party seeking to have the testimony | ^allowed had willfully or negligently failed to disclose important new information. Also, that failure to disclose the new information had significantly prejudiced the other party’s case by not allowing an opportunity to adequately defend against the new opinion. In this case, defense counsel knew Dr. Messina had altered his opinion, yet did not inform Maddox’s attorney about this and did not amend or supplement discovery responses to indicate that the substance of Dr. Messina’s testimony had changed. Therefore, Maddox’s attorney was completely blindsided by Dr. Messina’s new theory concerning Maddox’s left shoulder condition, which came out in his testimony on the second day of the jury trial. Although Maddox’s attorney did cross-examine Dr. Messina as well as he could under the circumstances, he had no time to prepare for cross-examination by consulting with his own expert or reviewing the texts on which Dr. Messina’s testimony was based. Also, since Dr. Johnston, Maddox’s treating physician, had testified, on the first day of trial and Dr. Messina testified on the second day of trial, Dr. Johnston did not hear the “Buford complex” theory and was not in court to rebut it. Defense counsel suggests that by failing to seek a continuance, Maddox “waived” his right to object to the admission of Dr. Messina’s testimony. We disagree. In this case, the jury had already heard the basic outlines of the “Buford complex” testimony before Maddox’s counsel even had the chance to recognize this as a new theory and object to it. Also, it is unlikely that the court would have disrupted its schedule and inconvenienced the jury by granting a continuance in the middle of the trial.
Our review of the record as a whole convinces us that Maddox’s case was seriously compromised by Dr. Messina’s testimony. In his opening statement to the jury, defense counsel stated, “We’re here for a shoulder, left shoulder really. That’s what this whole case is about, the left shoulder.” He also said that Dr. Messina would tell the jury that “when somebody suffers a traumatic shoulder injury you know it; it hurts, it hurts right away.” This statement focused the jury’s attention on the left shoulder and reiterated Dr. Messina’s deposition testimony about his opinion. Dr. Messina’s testimony about a “Buford complex” was the only evidence in the record that provided an explanation, other than the accident, for Maddox’s left shoulder condition. 114If the jury had any doubts about the left shoulder, Dr. Messi-na provided the explanation that would allow them to do what defense counsel suggested in closing argument — eliminate all the medical expenses attributable to the left shoulder surgery:
You look at the medicals that were provided. They’re very easy to break out. BRASS Surgery Center, $14,468, all shoulder surgery. Cut him off. The rest of them come off of Advance Therapy. That’s his therapy for his shoulder after. Cut it off. Dr. Johnston’s fee for the surgery and other charges, about $8,600. Total amount related to the shoulder scope, $26,632.
The jury subtracted approximately this amount from the total medical expenses incurred by Maddox as a result of the accident. When compared to the record in its totality, it is clear that Dr. Messina’s testimony had a substantial prejudicial effect on the outcome of the case for Maddox. Therefore, the trial court erred in allowing that testimony to be presented to the jury.
Maddox urges this court to conduct a de novo review of the evidence, ignoring Dr. Messina’s testimony and rendering an opinion on the record before us. *601 When a legal error interdicts the fact finding process, the manifest error standard no longer applies, and if the record is otherwise complete, the reviewing court should conduct a de novo review. Landry, 851 So.2d at 954. Since the trial court’s error in this case did interdict the jury’s fact finding process to the substantial detriment of Maddox, and since the record is otherwise complete after deleting Dr. Messina’s testimony about the “Buford complex,” we have conducted a de novo review of the record. Based on that review, we conclude that, in addition to the bulging discs in his neck and lower back, Maddox proved that he suffered a torn labrum in his left shoulder as a result of the accident. Therefore, the costs of repairing that injury should be awarded to him. See Carpenter v. Johnson, 95-0481 (La.App. 1st Cir.12/15/95), 664 So.2d 1354, 1858 (trier of fact errs when it fails to award the full amount of medical expenses proven by a victim). The medical records show that the total medical expenses incurred by Maddox, including the arthroscopic surgery and follow-up therapy for his left shoulder injury, were $54,891.97. Accordingly, we award that amount for past medical expenses.
In addition, we find that the awards for physical pain and suffering, mental pain and suffering, and loss of enjoyment of life should also reflect the damages attributable 115to Maddox’s left shoulder injury, in addition to the other injuries to his neck and lower back. General damages involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373 and 1374 (La.1992). The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. Jenkins v. State ex rel. Dep’t of Transp. and Dev., 06-1804 (La.App. 1st Cir.8/19/08), 993 So.2d 749, 767, writ denied, 08-2471 (La.12/19/08), 996 So.2d 1133.
Maddox experienced constant pain in his left shoulder for almost ten months, until the arthroscopic surgery repaired the torn labrum in June 2011. During that time, although he continued to work through the pain as a truck driver to support his family, he could not participate in family activities and sports that he had previously enjoyed. Epidural steroid injections eventually resolved the injuries to his neck and lower back, but these procedures were not successful in treating his left shoulder. Maddox tried every conservative measure suggested by his treating physician, seeking to avoid surgery, but finally the pain in his left shoulder became too severe, and he had to undergo the surgical procedure. Following the arthroscopic surgery, he had an additional six weeks of physical therapy to regain full use of his left shoulder and arm. The surgery was successful, and he did not return to the orthopedist after December 2011. Based on the nature and severity of his injuries, the length of time before all of his injuries were resolved, and the number and types of treatments required, we conclude that an award of $40,000 would compensate him for physical pain and suffering; $25,000 would compensate him for mental pain and suffering; and $5,000 would compensate him for loss of enjoyment of life. See Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206, 1210 ($75,000 — fractured thoracic vertebra, TMJ, cervical injury, cervical fusion); Gleber v. Mayfield, 11-1209 (La.App. 1st Cir.2/10/12), 2012 WL 602072 (unpublished) ($150,000 — bulging cervical disc, radiculopathy, carpal tunnel syndrome, right shoulder arthroscopy); *602 Ibrahim v. 16Hawkins, 02-0350 (La.App. 1st Cir.2/14/03), 845 So.2d 471, 475 ($60,-000 — arthroscopic shoulder surgery, fractured rib, soft tissue injuries, physical and psychological therapy); Birdsall v. Regional Elec. & Const. Inc., 97-0712 (La.App. 1st Cir.4/8/98), 710 So.2d 1164, 1169 ($150,000 — herniated cervical disc, cervical fusion); Quinn v. Wal-Mart Stores, Inc., 34,280 (La.App. 2nd Cir.12/6/00), 774 So.2d 1093, 1100-01, writ denied, 01-0026 (La.3/9/01), 786 So.2d 735 ($150,000-shoulder labral tear, arthroscopic surgery, major rotator cuff tear, probable future surgery).
CONCLUSION
For these reasons, we amend the October 4, 2012 judgment of the trial court and enter judgment in favor of Kevin Maddox and against Patricia Bailey, Diesel Specialists, Inc., and 21st Century National Insurance Company, in the amount of $124,891.97. In all other respects, the judgment is affirmed. Costs of this appeal are assessed against the defendants.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.

. All medical records had been provided to defense counsel during discovery, and Dr. Messina reviewed these in preparation for his deposition and trial.