MOORE, J.
 

 |, Gene Yee, the victim of a rear-end collision, appeals a judgment that awarded him general damages of $12,000 and special damages of only one-half the bill for his hospital visit, and denied his claim for dental work allegedly necessitated by the accident. Imperial Fire & Casualty, Yee’s host driver’s insurer, and State Farm, Yee’s own UM carrier, answer the appeal, asserting that general and special damages were excessive. For the reasons expressed, we amend to award the entire cost of Yee’s hospital visit, but otherwise affirm.
 

 Factual Background
 

 To celebrate Independence Day 2002, three residents of east Texas — Gene Yee, his son Ryan, and their friend Scott Peruc-ca — came to the Shreveport-Bossier area to visit the casinos. Early on the morning of July 4, they boarded a Casino Cab, a 1991 Crown Victoria driven by Georgiana Jones, to ride across the river from Har-rah’s (now known as Sam’s Town) in Shreveport to Horseshoe in Bossier City.
 

 Before they crested the 1-20 bridge, they encountered a 1973 Chevy truck stalled in the right lane. The truck’s driver, O’Quin, was putting gas in the tank (his fuel gauge was broken and he kept a filled two-gallon container on board for these occasions) while his passenger, Baker, was waving traffic around the stationary vehicle. All witnesses described the traffic as light at that hour of the morning. The Casino Cab drove up behind the truck and stopped.
 

 
 *875
 
 All three occupants of the cab testified that they implored Ms. Jones to drive around the truck, and O’Quin testified that Baker signaled them to |2pass; however, Ms. Jones sat in place, took out her cell phone and called 911 to report the stalled truck. Yee testified that as a retired Dallas police officer, he knew that stopping on the Interstate was very hazardous, and he yelled at her to move, but she would not be dissuaded from her phone call.
 

 At this time a 1996 Isuzu Hombre pickup driven by Gail Falcon also started to crest the bridge. Ms. Falcon did not notice the two vehicles stopped in her lane directly ahead; she rear-ended the Casino Cab, which in turn struck the Chevy truck. She later pled guilty to refusing a breathalyzer test. Photos of the Casino Cab show a substantial impact, with the rear bumper pushed nearly to the front of the rear tire fender.
 
 [1]
 

 Shreveport EMS drove Yee to the Christus Schumpert emergency room, where he reported facial contusions (two black eyes) and chest pain. The admission report also noted bigeminy (a kind of irregular heartbeat), diabetes, coronary artery disease, hyperlipidemia (excessive fats and lipids in the blood), and poison ivy rash on his legs. Yee testified that he told them he chipped three teeth in the impact, but the admission report does not mention this. Apparently because of the chest pains and irregular heartbeat, and Yee’s history of coronary artery disease, bypass surgery and other risk factors, doctors kept him at Schumpert overnight. The discharge summary noted facial contusions and back pain without radiculopathy, as well as heart and circulatory conditions. Schumpert’s bill was $10,898.30.
 

 |
 
 .¿Procedural History
 

 Yee and the other passengers of the Casino Cab, and their respective spouses, filed suit in June 2003. It began with five plaintiffs and the following defendants: Casino Cabs, the cab driver, Ms. Jones, and their insurer, Imperial; the driver of the Isuzu truck, Ms. Falcon, and her insurer, American International; Yee’s own UM carrier, State Farm; and Louisiana Department of Transportation and Development. State Farm alleged that it already paid Yee $5,000 under his PIP coverage. Ms. Jones filed a cross-claim against O’Quin and Imperial.
 

 Before trial in October 2008, the plaintiffs dismissed DOTD. At the start of trial, the injured parties’ wives dismissed their claims; Imperial, in its capacity as O’Quin’s liability carrier, settled with the plaintiffs for policy limits; and Ms. Jones’s cross-claim was dismissed for her failure to appear.
 

 At trial, Yee testified that when he got to the emergency room, he was more worried about his heart than anything else; he had two prior heart attacks, a bypass operation and diabetes (at first, however, he insisted he was not diagnosed with diabetes until a year
 
 after
 
 this incident), and stayed at Schumpert overnight because of heart-related issues. He also testified that he chipped three teeth in the accident, and tried to tell the intake personnel that he had “teeth in his mouth,” but they apparently paid him no heed. His dentist proposed to crown the teeth for $3,357.00. Yee also claimed that since the accident, he has had persistent problems with diminished hearing and wax buildup in his left ear, which struck the cab’s headrest in the collision; he disputed his own doctor’s assessment that ^hearing loss resulted
 
 *876
 
 from long exposure to noise (particularly gunfire as a policeman) and not the accident. He took physical therapy from July 12 through August 8, but disagreed with the therapist’s discharge report that he had “met all goals.” He also testified that he never had irregular heartbeat until this accident, and did not know what the discharge summary meant when it said the bigeminy was “of unknown etiology.” Finally, Yee testified that because of the accident, he had to dissolve one of the work crews in his landscaping business, resulting in a loss of nearly $14,000 over several months’ time; however, he could not explain his own tax returns (prepared by a CPA), which actually showed a small increase of gross earnings from 2001 to 2002.
 

 Shortly after trial, American International and Ms. Falcon settled with the plaintiffs.
 

 Action of the Trial Court
 

 The district court rendered a ruling on liability and apportionment of fault, finding the three cab passengers free of fault, and assigning fault 30% to O’Quin, 50% to Ms. Falcon and 20% to Ms. Jones.
 

 In a subsequent ruling on quantum, the court called the impact “significant” and alluded to Yee’s “various maladies,” but found that his “most significant complaints are not medically and legally connected to the accident.” The court considered it “indeed a difficult exercise to determine what portions” of the Schumpert invoice could be ascribed to the accident, so it awarded one-half the total. The court found that special damages (EMS and physical therapy) arising from the accident and soft-tissue injury |swere recoverable, but those for irregular heartbeat, hearing loss and chipped teeth were not. The court awarded general damages of $12,000 and denied the claim for loss of income to Yee’s landscaping business.
 

 Yee’s special and general damages totaled $20,066.98. Reduced to Ms. Jones’s 20% fault, Yee’s award against Imperial was $4,013.40.
 
 [2]
 
 Because Yee’s total damages did not exceed his underlying liability coverage, the judgment dismissed his claims against State Farm for UM proceeds.
 

 Yee has appealed, raising three assignments of error seeking increased damages. Imperial, as Casino Cabs’ insurer, has answered seeking reduced damages. State Farm, Yee’s UM carrier, has also answered, adopting Imperial’s position
 
 in ex-tenso.
 

 Discussion: Emergency Room Expenses
 

 By his first assignment of error, Yee urges the court abused its discretion in refusing to award all medical expenses incurred at Schumpert. Yee concedes he owes the burden of proving causation by a preponderance of the evidence, but urges he is entitled to the presumption of causation under
 
 Housley v. Cerise,
 
 579 So.2d 973 (La.1991), as he was in good health before the accident, symptoms began after the accident and continuously manifested themselves afterward, and the medical evidence shows a reasonable possibility of a causal connection. He asserts he was indeed in good health prior to the accident, with no chest, neck or back pain, no facial lacerations, and under no medical care. He therefore concludes | fithat he is entitled to the presumption that all the care he received at Schumpert resulted from the accident.
 

 Imperial responds that Yee was demonstrably not in good health before the accident, with more than one heart attack,
 
 *877
 
 coronary artery disease, a bypass operation, diabetes and hyperlipidemia. Imperial submits the court was well within its discretion to reject the
 
 Housley
 
 presumption. It further contends that Yee failed to prove by a preponderance that even 50% of his hospital bill resulted from the accident; he merely offered a large hospital statement. Citing the discharge report (“Bigeminy as above, new onset, unknown etiology for now”), Imperial urges the evidence shows that the accident did not cause the irregular heartbeat, and Yee failed to show which specific items, if any, of the $10,898.30 total, resulted from the accident. It seeks to reverse the entire award.
 

 A person injured through the fault of another is entitled to full indemnification for the damages caused thereby. La. C.C. art. 2315;
 
 Wainwright v. Fontenot,
 
 2000-0492 (La.10/17/00), 774 So.2d 70. The plaintiff must prove fault, causation and damages.
 
 Id.; Hanks v. Entergy Corp.,
 
 2006-477 (La.12/18/06), 944 So.2d 564. Nevertheless, a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.
 
 Wainwright v. Fontenot, supra; Touchard v. SLEMCO Elec. Foundation,
 
 99-3577 (La.10/17/00), 769 So.2d 1200. The tortfeasor is required to indemnify the cost of overtreatment or unnecessary medical treatment unless the overtreatment was incurred in bad faith.
 
 Green v. Nunley,
 
 42,343 (La.App. 2 Cir. 78/15/07), 963 So.2d 486;
 
 Etheredge v. St. Paul Mercury Ins. Co.,
 
 35,832 (La.App. 2 Cir. 4/3/02), 814 So.2d 119;
 
 Revel v. Snow,
 
 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655,
 
 writ denied,
 
 95-2820 (La.2/2/96), 666 So.2d 1084,
 
 recon. denied,
 
 (La.3/22/96), 669 So.2d 1226.
 

 The record shows that Yee was not in good health prior to the accident and hence not entitled to the
 
 Housley
 
 presumption that it caused his irregular heartbeat, arterial disease and diabetes. However, the fact that he suffered from these conditions only amplifies the need and reasonableness of his extensive ER and hospital treatment. When a person in Yee’s condition sustains obvious trauma (bruised face, chest and back pain), he will likely need more observation and diagnostics than a young, healthy person who was in the same accident. The Schumpert medical record shows comprehensive monitoring of a fragile patient. It is, in effect, an obvious example of taking the victim as the tortfeasor finds him and indemnifying him for all the natural and probable consequences of the tort.
 

 Moreover, there is no showing whatsoever that Yee incurred unnecessary or excessive treatment in bad faith; in such a case, it is an abuse of discretion not to award the full extent of initial medical treatment.
 
 Etheredge v. St. Paul Mercury, supra; Revel v. Snow, supra.
 

 The district court abused its discretion in disallowing part of the hospital treatment. The judgment will be amended to award the entirety of Schumpert’s bill.
 

 |
 
 fjlenlal Repairs
 

 By his second assignment, Yee urges the district court abused its discretion in denying a causal link between his chipped teeth and the accident. He cites his own uncontradicted testimony that his teeth were damaged in the accident, and submits there was no valid reason for the court to discount it. He asks this court to enter judgment for the dentist’s visit, $316.00, and the estimate to repair his teeth, $3,357.00.
 

 Imperial responds that the Schumpert admission report said Yee’s head was “atraumatic” and the whole hospital record is silent as to his teeth. Further, Yee’s testimony that he told ER personnel he
 
 *878
 
 “had teeth in his mouth” was simply not credible. Imperial contends this portion of the judgment should be affirmed.
 

 Causation is a factual finding which the appellate court will not reverse absent manifest error.
 
 Detraz v. Lee,
 
 2005-1263 (La.1/17/07), 950 So.2d 557. In order to reverse a trial court’s factual finding, the appellate court must review the entire record and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Coutee v. Global Marine Drilling Co.,
 
 2005-0756 (La.2/22/06), 924 So.2d 112. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Id.
 
 When the fact finder’s determination is based on its decision to credit or discredit the testimony of a witness, that finding can virtually never be manifestly erroneous.
 
 Adams v. Rhodia Inc.,
 
 2007-2110 (La.5/21/08), 983 So.2d 798;
 
 Green v. Nunley, supra.
 

 Strikingly, the hospital record from Schumpert never mentions chipped teeth. Yee’s testimony that his “heart was more of an issue at that time” might explain his failure to mention another, minor injury when he first arrived at the ER; however, Yee spent nearly 36 hours at Schumpert, undergoing extensive obsei-vation, but the chart is totally silent as to any dental issues. Moreover, Yee’s claim of lost income as a result of the accident, when his tax returns actually showed increased gross earnings in 2002, may have influenced the district court’s view of his credibility.
 

 On this record, we cannot say the court was plainly wrong in finding that Yee failed to prove, by a preponderance of the evidence, that he chipped his teeth in this accident. The denial of his claim for dental repairs will be affirmed.
 

 General Damages
 

 By his final assignment, Yee urges that the award of $12,000 in general damages is unreasonably low. He concedes that general damages usually fall within the court’s vast discretion, but asserts that when the award is based on an erroneous legal conclusion it is not entitled to the same discretion.
 
 Johnson v. State,
 
 95-0003 (La.App. 1 Cir. 10/6/95), 671 So.2d 454,
 
 writ denied,
 
 95-2666 (La.1/5/96), 667 So.2d 522. He argues that denying the entirety of the ER visit and the chipped teeth constituted an erroneous legal conclusion. He submits that $5,000 would be reasonable for the chipped teeth alone.
 
 Risk v. State,
 
 549 So.2d 1272 (La.App. 3 Cir.1989).
 

 ^jjjlmperial responds that Yee sustained bruises and soft-tissue injuries of brief duration; by August 8, after only 11 therapy sessions, he was discharged with “increased range of motion” and with all goals having been met. Imperial submits that the award was actually generous, as $2,500 has been affirmed for more serious injuries, as in
 
 Jones v. Thomas,
 
 27,140 (La.App. 2 Cir. 8/23/95), 660 So.2d 86,
 
 writ denied,
 
 95-2351 (La.12/8/95), 664 So.2d 426, and
 
 Westley v. Allstate Ins. Co.,
 
 05-100 (La.App.5/31/05), 905 So.2d 1127. It asks this court to reduce the award, not increase it.
 

 General damages are those which may not be fixed with pecuniary exactitude; instead, they involve “mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.”
 
 Kaiser v. Hardin,
 
 2006-2092 (La.4/11/07), 953 So.2d 802, and citations therein. Vast discretion is accorded the trier of fact in fixing gener
 
 *879
 
 al damage awards. La. C.C. art. 2324.1;
 
 Kaiser v. Hardin, supra.
 
 This vast discretion is such that the appellate court should rarely disturb an award of general damages.
 
 Hae Woo Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257 (La.1993),
 
 cert. denied,
 
 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
 

 Yee was a passenger in a cab that was rear-ended at a fairly high speed and slammed into the rear of a stalled truck. The district court properly described the impact as “significant,” and the experience was compounded by the exasperation of vainly ordering his driver, Ms. Jones, to move the cab before it happened. In the collision, he sustained facial cuts and bruises and immediately noticed chest and back pain. He was taken to | nthe ER where, because of his preexisting condition, he spent the night at the hospital. He attended therapy for under one month and appears to have met all goals. The medical evidence did not show that this accident caused any permanent aggravation of his preexisting heart and vascular disease; it refuted any suggestion that the accident caused his hearing loss. Although he offered some evidence to this effect, he did not convince the district court that he either damaged his teeth in the accident or lost any earning capacity because of his injuries.
 

 Considering the magnitude of the collision, Yee’s prior medical problems, his successful rehabilitation, and the absence of any lingering or permanent consequences, we find no abuse of the district court’s discretion in awarding general damages of $12,000. It is neither inadequate nor excessive. This portion of the judgment will be affirmed.
 

 Conclusion
 

 For the reasons expressed, the judgment is amended to award Gene Yee the entirety of the Christus Schumpert hospital bill, $10,898.30. Yee’s total damages, $22,516.13, are reduced to Ms. Jones’s 20% share of the fault, or $5,103.23. Judgment is therefore rendered in favor of the plaintiff, Gene Yee, and against Georgiana Jones, Casino Cabs and Imperial Fire & Casualty Co., in the amount of five thousand, one hundred, three dollars and 23/100 ($5,103.23). In all other respects, the judgment is affirmed.
 

 Appellate costs are to be paid one-half by Gene Yee and one-half by Imperial Fire & Casualty Co.
 

 AMENDED AND AFFIRMED.
 

 [1]
 

 . The police report, although used at trial to refresh the investigating officer's memory, was not offered in evidence. At oral argument, plaintiff's counsel stated that Ms. Falcon was driving about 55 miles per hour.
 

 [2]
 

 . Jeffrey Yee and Scott Perucca, the other remaining plaintiffs, received smaller awards for which they executed a receipt and satisfaction.