DRAKE, J.
|2In this personal injury case, the defendants challenge the damages awarded by the district court to the plaintiff following a bench trial.

FACTS AND PROCEDURAL HISTORY

The accident at issue occurred on January 26, 2012, when a 1990 Ford F-150 owned by the plaintiff, Joseph Lohenis, was rear-ended by a vehicle owned and operated by the defendant, Tammy Rousse. At the time of the accident, the plaintiffs son, Matthew J. Lohenis, was operating the vehicle. The plaintiffs wife, Dawn Lohenis, was a guest passenger in the front seat, and the plaintiff was a guest passenger sitting in the middle of the back seat, where he wore only a lap seat belt. The Lohenis family was stopped at a stop sign behind several cars on Highway 1249 South in Tangipahoa Parish, Louisiana, when Ms. Rousse rear-ended their vehicle at approximately 45-miles-per-hour. The impact caused Mr. Lohenis’s body to move forward, where he hit the console; then, his body moved backward, where the back of his head and neck hit the truck’s back glass window. (R.53) The defendant’s vehicle was insured by Truck Insurance Exchange, a Division of Farmers.[1]
Mr. Lohenis filed the instant suit against Ms. Rousse and Truck Insurance Exchange, seeking recovery for damages for the aggravation of pre-existing neck and back injuries allegedly sustained as a result of the automobile accident. A bench trial was conducted on April 15, 2014, on the issue of damages.[2] On April 25, 2014, the district court issued its judgment in favor of Mr. Lohenis and against the defendants. The district court awarded Mr. Lohenis $47,857.50 in damages.
|sThe defendants now appeal, contending that the trial court erred in the amount of general damages awarded to the plaintiff. *1024 Specifically, the defendants assert four assignments of error, which we summarize as follows:
1. The trial court erred in admitting into evidence a third-party medical record on rebuttal as a basis for discrediting the testimony of the plaintiffs treating neurosurgeon and as a basis for finding that the plaintiff suffered aggravation of pre-ex-isting injuries for sixteen-and-a-half months following the accident.
2. The trial court erred in finding that the plaintiff proved he suffered aggravation of pre-existing injuries beyond two months following the accident, given the medical records introduced at trial and the expert medical testimony of the plaintiffs treating neurosurgeon.
3. The trial court erred in using a mathematical formula to calculate the general damages awarded to the plaintiff.
4. The trial court erred in finding that the plaintiff would be entitled to damages for loss of consortium, when the plaintiff did not plead a loss of consortium claim in his original petition and introduced no evidence of said claim at trial.

LAW AND DISCUSSION

Assignments of Error 1-3

The defendants’ first three assignments of error are interrelated. In their second assignment of error, the defendants argue that the general damages award is abusively high in light of the fact that Mr. Lohenis, who had chronic neck and back pain dating back well before the accident at issue occurred, failed to carry his burden of proof that he suffered a sixteen- and-a-half-month aggravation of his preexisting neck and back injuries. The defendants contend that Mr. Lohenis failed to prove that he suffered any aggravation of these pre-existing injuries beyond two months after the accident, based on the medical records and expert medical testimony introduced at trial. Furthermore, the defendants argue in their first assignment of error that the district court erred in admitting into evidence, on rebuttal, a two-page medical record of the plaintiffs wife, which attempted to establish the duration of the aggravation of the plaintiffs preexisting injuries. | ¿Finally, in their third assignment of error, the defendants claim that the district court improperly calculated the damages award, in the amount of $47,857.50, using a mathematical formula.

Plaintiffs Burden of Proof/Damages

“General damages” involve mental or physical pain or suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Boudreaux v. Farmer, 604 So.2d 641, 654 (La.App. 1st Cir.), writs denied, 605 So.2d 1373, 1374 (La.1992). The primary objective of general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding injury. Daigle v. U.S. Fidelity and Guar. Ins. Co., 94-0304 (La.App. 1 Cir. 5/5/95), 655 So.2d 431, 437.
“Special damages” are those which must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty. Some special damages, such as medical and related expenses, etc., are easily measured. Smith v. Escalon, 48,129 (La.App. 2 Cir. 6/26/13), 117 So.3d 576, 583.
A defendant in a personal injury case takes the victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor’s conduct aggravates *1025 a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Robinson v. Tolbert, 40,488 (La.App. 2 Cir. 1/20/06), 920 So.2d 846, 348. The “eggshell plaintiff’ is required to establish a causal link between the tortious conduct and the aggravation of his pre-existing condition. Bienemann v. State Farm Mut. Auto. Ins. Co., 08-1045 (La.App. 3 Cir. 2/4/09), 3 So.3d 621, 623.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident that caused the injury. | ¡¿Before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim’s current status must also be established. Proof must be by a preponderance of the evidence. The test for determining the causal relationship is whether the plaintiff proved, through medical testimony, that it is more probable than not that the subsequent injuries were caused by the accident. Bennett v. Louisiana Farm Bureau Cas. Ins. Co., 43,216 (La.App. 2 Cir. 4/30/08), 983 So.2d 966, 972.
Thus, in determining the amount of general damages to be awarded, the district court, as the trier of fact, had to determine whether Mr. Lohenis met his burden of proof, by a preponderance of the evidence, that he suffered aggravation to his pre-existing injuries as a result of the accident, as well as the duration of the aggravation to his injuries. The trier of fact is accorded much discretion in fixing general damage awards. La. C.C. art. 2324.1; Cheramie v. Horst, 93-1168 (La. App. 1 Cir. 5/20/94), 637 So.2d 720, 723. The discretion vested in the trier of fact is “great,” even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but, rather, to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier of fact abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. Youn, 623 So.2d at 1261. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could | (¡assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Id.
The nature, relative severity, and bodily extent of injuries are qualitative factors that must first be considered by the trier of fact in awarding general damages. The duration of a plaintiffs injury symptoms and the duration of treatment are relevant quantitative factors that must also be taken into account. See Gillmer v. Parish Sterling Stuckey, 09-0901 (La.App. 1 Cir. 12/23/09), 30 So.3d 782, 788, and Thibodeaux v. USAA Cas. Ins. Co., 93-2238 (La.App. 1 Cir. 11/10/94), 647 So.2d 351, 357.
Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate or excessive. See Theriot, 625 So.2d at 1340. And, it is only after such a threshold determination of an abuse of discretion that the appellate court should ex *1026 amine prior awards for similar injuries to modify the award within the range of reasonable discretion. See Reck v. Stevens, 378 So.2d 498, 500-01 (La.1979), and Coco v. Winston Indus., Inc., 341 So.2d 332, 335-36 (La.1976). We therefore must first review the particular circumstances of Mr. Lohenis’s injuries and treatment to determine whether the district court abused its discretion.
The record establishes that Mr. Lohenis was forty-four years old at the time of the accident. Mr. Lohenis suffered from anxiety, depression, diabetes, chronic obstructive pulmonary disease (COPD), high cholesterol, hypertension, esophageal reflux, headaches, hyperlipidemia, arthritis, and he smoked a pack of cigarettes daily, as well as drank alcohol daily. The plaintiff also suffered from chronic neck and back pain, dating back several years prior to the accident. In 2011, Mr. Lohenis quit his job at Wal-Mart due to his chronic neck and back pain. Prior to working at Wal-Mart, Mr. Lohenis laid ceramic tile for approximately nineteen |7years, which required him to bend over on his hands and knees for extended periods of time. Mr. Lohenis testified that prior to the accident, he visited a Dr. Burdine in 2009 and 2010 for pain management, where he received steroid injections that he testified did not help with his pain.[3] Mr. Lohenis also testified that he went to Lallie Kemp Regional Medical Center (Lallie Kemp) numerous times, due to lack of medical insurance, where he complained of chronic neck and back pain, in addition to other medical problems.[4] On the day of the accident, Mr. Lohenis testified he was taking numerous medications for his chronic neck and back pain: Loratab, Medrol, and Flex-eril, a common muscle relaxant used to treat skeletal muscle injuries, such as neck and back pain.
Following the accident, Mr. Lohenis first sought treatment on January 27, 2012, the day after the accident, at the emergency room at North Oaks Medical Center (North Oaks). The notes from the emergency room indicate that Mr. Lohenis stated he had been injured in an automobile accident the day before and was experiencing neck and low back pain, neck spasms, left elbow pain, and was having trouble swallowing. The emergency room records also include notes that Mr. Lohen-is suffered from chronic neck and back pain. Mr. Lohenis rated his pain at a 7 out of 10. X-rays were taken of Mr. Lo-henis’s neck and back, showing only minimal degenerative disc disease. The plaintiff was diagnosed with a cervical, thoracic, and elbow strain. Mr. Lohenis was prescribed Flexeril and Lortab and given a C-Collar, which he testified he wore for approximately one month.
IsNext, Mr. Lohenis was treated by his primary care physician, Dr. Charles Du-combs, on February 2, 2012, approximately one week after the accident. Dr. Du-combs’s notes indicate that the plaintiff sought treatment with him due to injuries *1027 related to a motor vehicle accident. Dr. Ducombs noted that the plaintiff was experiencing neck stiffness, back pain, and having a hard time swallowing, but had no significant headaches and “always had some mild weakness of his legs with numbness tingling and shooting pains down his legs.” After reviewing the X-rays taken at North Oaks, Dr. Ducombs wrote in his notes that it was “[d]iffieult to assess pain as he has chronic neck and back pain. He does say the pain pill [Lortab] and muscle relaxant [Flexeril] helped when he remembers to take it. Some of his effort I think is lacking due to pain so I’m not sure as to accuracy of physical exam.” Dr. Ducombs recommended Mr. Lohenis see a pain management specialist, but from the record, it appears the plaintiff did not schedule an appointment.
Eleven months later, on January 10, 2013, Mr. Lohenis consulted Dr. Lori Summers, a neurosurgeon, who had been treating his wife. The plaintiffs chief complaint was “low back pain and neck pain.” Mr. Lohenis stated his pain was an 8 out of 10. Dr. Summers noted the plaintiffs medical history and reviewed imaging of Mr. Lohenis’s injuries; however, her notes do not mention that Mr. Lohenis was involved in a motor vehicle accident in January 2012, nor that the treatment sought by him was related to injuries aggravated by a motor vehicle accident.[5] Dr. Summers diagnosed Mr. Lohenis with cervicalgia and lumbago[6] and recommended the plaintiff undergo physical therapy. She ordered a cervical and | glumbar MRI for the plaintiff on February 11, 2013, and scheduled a follow-up visit to review the results of the MRI.
At the follow-up visit on February 26, 2013, Dr. Summers noted the plaintiffs medical history, which again, did not mention Mr. Lohenis’s involvement in a motor vehicle accident in January 2012. Mr. Lo-henis stated his pain was a 7 out of 10. Dr. Summers reviewed the plaintiffs MRI results, which showed no significant degenerative changes. Dr. Summers recommended that Mr.. Lohenis continue physical therapy and see a chiropractor, as he did not require surgery.
By the time of trial, over two years after the accident, Mr. Lohenis continued to complain of neck and back pain, as well as muscle spasms in his neck. At trial, Mr. Lohenis and his wife both testified that his pain was worse than before the January 2012 accident and that aggravation of his injuries persisted. The plaintiff testified that his neck and back continued to hurt worse than before the accident and that he was having trouble extending or turning his head. Mr. Lohenis and his wife testified that he had a hard time getting out of bed and used ice packs and heat compression to combat his pain, as well as physical therapy, which he began on May 6, 2013, and ended on July 9, 2013/ Mr. Lohenis testified that he went back to work at Wal-Mart in November 2013.
Prior to trial, Dr. Summers was deposed regarding her assessment and treatment of Mr. Lohenis. Dr. Summers testified that at the two appointments where she saw Mr. Lohenis, he never mentioned that his neck and back pain was caused or aggravated by a motor vehicle accident. After diagnosing Mr. Lohenis with cervi-ealgia and lumbago, her treatment recommendation was that the plaintiff undergo a *1028 cervical and lumbar MRI and physical therapy. After comparing the | Ulplaintiffs previous MRIs with the MRIs ordered by her. Dr. Summers testified that she saw no significant changes. Dr. Summers testified that in her expert medical opinion, she could not relate any of the plaintiffs neck and back pain to a motor vehicle accident, as his pain was related to a chronic, ongoing condition, which the plaintiff had been experiencing for many years.
The defendants contend that Mr. Lohen-is failed to carry his burden that a causal relationship existed between the aggravation of his pre-existing injuries and the accident which caused the injury, or introduce any evidence at trial to establish that he underwent any accident-related treatment beyond February 2012. In contrast, Mr. Lohenis argues that he experienced aggravation of his neck and back pain for sixteen and a half months. The plaintiff argues that he suffered from the date of the accident through his discharge from physical therapy in July 2013, and that all treatments during that time were related to the January 2012 motor vehicle accident. Mr. Lohenis stated that Dr. Summers knew her treatment of him was related to the accident. He testified that he accompanied his wife on her weekly visits to Dr. Summers and that because he did not have insurance, Dr. Summers saw him free of charge as a favor to his wife. , Mr. Lohenis testified he told Dr. Summers he was in the same car accident as his wife and that the information was not contained in Dr. Summers’s medical records on file for the plaintiff because that fact was told to Dr. Summers in conjunction with her treatment of Mrs. Lohenis. Mrs. Lohenis likewise testified that she told Dr. Summers she was in a motor vehicle accident with her husband and son.
To bolster the testimony that Mr. Lohenis did tell Dr. Summers he was seeking treatment related to injuries sustained in a motor vehicle accident, and to establish that his accident-related injuries were ongoing, counsel for the plaintiff introduced, on rebuttal, a two-page medical record of the plaintiffs wife dated May 8, 2012, which was admitted by the district court. Prior to the accident, Dr. |1TSummers performed an anterior cervical discectomy and fusion (ACDF) on Mrs. Lohenis in October 2011. Following a May 8, 2012 visit, Dr. Summers recommended scheduling another surgery due to injuries sustained by Mrs. Lohenis as a result of the January 2012 accident. In her notes from the appointment, Dr. Summers wrote that Mrs. Lohenis was “involved in a very severe MVA, she states, back in 01/2012 in which they were at a complete stop and she was rear-ended by a vehicle going approximately 45 miles per hour.” (Emphasis added.)
As stated previously, Mrs. Lohenis settled out of court with the defendants for her injuries sustained in this accident, and she is not a party to the present litigation. Although Mr. Lohenis is not named in the document, the plaintiff introduced this medical record of his wife in an attempt to contradict Dr. Summers’s statement that the plaintiff did not tell her of his involvement or of his injuries sustained in a motor vehicle accident.
The trial court has great discretion in controlling the conduct of the trial and the presentation of evidence, including the power to admit or refuse to admit rebuttal evidence. Rebuttal evidence is that which is offered to explain, repel,- counteract, or disprove facts given in evidence by the adverse party. Bickham v. Riverwood Intern. Corp., 42,122 (La.App. 2 Cir. 10/8/07), 966 So.2d 820, 824. The district court’s decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of its broad discretion. Medine v. Roniger, OS-3436 (La.7/2/04), 879 So.2d 706, 711.
*1029 Louisiana Code of Evidence article 103(A) provides that error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. In reviewing evidentiary decisions of the | atrial court, the appellate court must consider whether the particular ruling complained of was erroneous and if so, whether the error prejudiced the complainant’s cause, for unless it did, reversal is not warranted. Brumfield v. Guilmino, 93-0366 (La.App. 1 Cir. 03/11/94), 633 So.2d 903, 911, writ denied, 94-0806 (La.05/06/94), 637 So.2d 1056. The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case. Maddox v. Bailey, 13-0564 (La.App. 1 Cir. 5/19/14), 146 So.3d 590, 594. Legal errors are prejudicial when they materially affect the outcome of the trial and deprive a party of substantial rights. Id. When a legal error interdicts the fact finding process, the manifest error standard no longer applies. If the record is otherwise complete, the reviewing court should conduct a de novo review. Id.
The defendants objected to the introduction of the third-party medical record of the plaintiffs wife. The defendants argued that this medical record was not provided to the defendants prior to the taking of Dr. Summers’s deposition nor prior to the bench trial, removing from the defendants any opportunity for cross-examination. Furthermore, the defendants argue that in addition to being irrelevant, as Mrs. Lohenis is not a party to this suit, the medical record does not name Mr. Lohenis or describe any injury sustained by him. We agree with the defendants.
Our review of the record as a whole convinces us that the defendants’ ease was seriously compromised by the introduction of the third-party medical record on rebuttal. Mr. Lohenis introduced the medical record to demonstrate that the purpose of his visits with Dr. Summers and the physical therapy recommended by her were for treatment related to his injuries sustained in the January 2012 motor vehicle accident and not related solely to his chronic neck and back pain. The district court relied on this document to establish the duration of the aggravation of Mr. Lohenis’s injuries: sixteen-and-a-half months.
113Had this document not been deemed admissible by the trial court, Mr. Lohenis would not have carried his burden that his accident-related injuries continued beyond February 2012, because Dr. Summers’s notes from her visits with Mr. Lohenis contain no mention of injuries resulting from a motor vehicle accident. In fact, in her notes and in her deposition, Dr. Summers stated that Mr. Lohenis presented to her for treatment related to chronic neck and back pain and never mentioned his involvement in a motor vehicle accident. Dr. Summers could not relate Mr. Lohen-is’s pain to a motor vehicle accident and instead, attributed his pain to a chronic, ongoing condition he had been suffering from for many years. Furthermore, as Dr. Summers was deposed prior to trial, the defendants, who were not aware the plaintiff would introduce this document on rebuttal, were deprived of the opportunity to re-call Dr. Summers to the stand to be cross-examined on the third-party medical record. Thus, the introduction of third-party medical record was prejudicial, as it had a substantial outcome on the case, and interdicted the fact finding process. Therefore, we find that the district court erred in admitting the two-page medical record of Mrs. Lohenis on rebuttal.
*1030 Following the bench trial, the district court ruled that Mr. Lohenis carried his burden that a causal relationship existed between the aggravation of his preexisting injuries and the January 2012 motor vehicle accident. The district court found Mr. Lohenis to be a credible witness and noted his testimony regarding his increased and continuing pain caused by the accident, which the district court reasoned was severe enough to require his wife, who was in the same accident, to have back surgery following the accident. Despite the expert medical testimony of Dr. Summers, who did not link the plaintiffs pain to the accident, the district court ruled that Mr. Lo-henis continued to- have “residual pain” following the accident through his discharge from physical therapy on July 9, 2013, approximately 114sixteen-and-a-half months later. However, in its oral reasons for ruling, the district court stated:
Clearly, [Mr. Lohenis] had a previous existing back condition, and the issue for this court is whether or how much of that was exacerbated or caused by or aggravated by this accident. Dr. Summers says that at the time when she saw [Mr. Lohenis] it was unremarkable in that it was no significant change. When [Mr. Lohenis] was seen in the emergency room and then later by Dr. Ducombs, there is some relation to the automobile accident as being the causal connection to the complaints that he was suffering from. To be quite honest with you, I really don’t know. I don’t know where the aggravation from the accident stopped and where, if it is the normal pain and suffering that he has, came back into play. [Emphasis added]
Just as it was not clear to the district court, it is not clear from the record and exhibits before this court when the plaintiffs chronic neck and back pain returned to its “pre-accident state.” Mr. Lohenis’-s visit to the emergency room and his visit to his primary care physician, Dr. Du-combs, are clearly accident related — all medical documents related to those visits note the plaintiffs involvement and the resulting aggravation of his pre-existing injuries from a motor vehicle accident., The record indicates that Mr. Lohenis did not seek treatment for his chronic neck and back pain until eleven months later, when he saw Dr. Summers. The records of the plaintiffs visits with Dr. Summers indicate that he was seeking treatment for chronic pain and contain no mention of his involvement in a motor vehicle accident or any injuries sustained therefrom. Thus, we are unable to find that the aggravation of the plaintiffs pre-existing injuries began on January 26, 2012, and continued through the plaintiffs visits to Dr. Summers and his physical therapy appointments, ending on July 9, 2013.[7] While the plaintiff clearly has chronic neck and back pain, and saw Dr. Summers and attended physical therapy in an attempt to minimize his pain, we cannot say that any treatments beyond February 2012 are related to aggravation of his pre-existing injuries caused by the January 26, 2012 motor vehicle accident.
|!BWhen a legal error interdicts the fact finding process, the manifest error standard no longer applies, and if the record is otherwise complete, the reviewing court should conduct a de novo review. Maddox, 146 So.3d at 601. Since we find that the district court’s error in this case *1031 did interdict the fact finding process to the substantial detriment of the defendants, and since the record is otherwise complete after deleting the third-party medical record of the plaintiffs wife, we have conducted a de novo review of the record. Based on that review, we conclude that Mr. Lo-henis proved that he suffered aggravation of his pre-existing neck and back injuries through February 2012. The medical records show that the total medical expenses incurred by Mr. Lohenis, including his emergency room visit and imaging studies, medicines prescribed following the emergency room visit, and his visit to Dr. Du-combs, were $8,267. Accordingly, we award that amount for past medical expenses.
In addition, we find that awards for physical pain and suffering, mental pain and suffering, and loss of enjoyment of life should also reflect the damages attributable to Mr. Lohenis’s injuries. Based on his injuries, we conclude that an award of $15,000 in general damages would compensate him. See, e.g., McMaster v. Progressive Sec. Ins. Co., 14-0155 (La.App. 4 Cir. 10/29/14), 152 So.3d 979, 988 (jury awarded $10,000 for pain and suffering following rear-end collision for aggravation of pre-existing soft-tissue neck injuries, required treatment for over two years, underwent two-level fusion); Frost v. Carter, 13-0375 (La.App. 4 Cir. 4/2/14), 140 So.3d 59, 64-67 (general damage award of $13,000 following rear-end collision and exacerbation of pre-existing neck, back, and left carpal tunnel symptoms); Hoffman v. 21st Century N. Am. Ins. Co., 13-0054 (La.App. 1 Cir. 9/13/13), 2013 WL 5176914, at *3 (awarded $4,500 for aggravation of pre-existing neck and back pain following rear-end collision; treated with a chiropractor for one month and an orthopedist once a month for six months; did not wear a back brace, |inhave epidural steroid injections, or go to physical therapy as recommended by orthopedist); Smith v. Escalon, 117 So.3d at 581-82 (general damage award of $20,000 for soft-tissue injury following rear-end collision; history of back pain and spinal issues, prostate cancer, pain not resolved by trial over two years later); Lee v. Briggs, 23 So.3d at 365 (reduction of $10,000 general damage award to $6,225 for soft-tissue neck and back injuries sustained in motor vehicle collision, treated for two months after the accident, with some pain flare ups); Stelly v. Zurich Am. Ins. Co., 11-1144 (La.App. 3 Cir. 2/1/12), 83 So.3d 1225, 1228-30 (general damage award of $20,000 increased to $43,000 for soft-tissue neck and back injures sustained in rear-end collision required over twenty-eight months of chiropractic treatment), Guidry v. State Farm Fire and Cas. Co., 11-262 (La.App. 3 Cir. 10/5/11), 74 So.3d 1276, 1281-84, writ denied, 11-2470 (La.2/10/12), 80 So.3d 472 (general damage award of $10,000 for aggravation of pre-existing injuries to neck, back, and shoulder as a result of being rear-ended in the second of two similar vehicle accidents that occurred only two weeks apart; “eggshell” plaintiff with chronic pain for fifteen years); Pittard v. Lewis, 45,412 (La.App. 2 Cir. 8/11/10), 46 So.3d 202, 204-05 (general damage award of $18,000 for soft-tissue neck and back pain, closed head injury, and facial contusion sustained in rear-end collision; residual pain not resolved by trial); Yee v. Imperial Fire & Cas. Ins. Co., 44,802 (La. App. 2 Cir. 10/28/09), 25 So.3d 872, 878-79 (general damage award of $12,000 to plaintiff with pre-existing heart and vascular disease who experienced contusions, chest, and back pain following rear-end collision; spent the night in emergency room; underwent therapy for one month); Bennett v. Louisiana Farm Bureau Cas. Ins. Co., 43,216 (La.App. 2 Cir. 4/30/08), 983 So.2d 966, 974-75 (reduction of $48,000 general damage award to $20,000 for soft-tissue back injury; treated for less than eight months after accident, with some residual *1032 experiences with back pain); Ursin v. Russell, 07-859 (La.App. 5 Cir. 2/6/08), 979 So.2d 554, 559-62 (awarded $3,325 in medical expenses and $7,500 in general damages for soft-tissue neck and back injuries sustained in rear-end collision; treated with chiropractor for approximately six months); Burrell v. Williams, 05-1625 (La.App. 1 Cir. 6/9/06), 938 So.2d 694 (award of $10,000 in general damages to injured motorist who sustained cervical strain, back strain, and contusions to ribs, where injuries resolved within five months); Caruso v. Canal Indent. Co., 03-423 (La.App. 5 Cir. 9/16/03), 858 So.2d 31, 35, writ denied, 03-2752 (La.1/16/04), 864 So.2d 631 (reduction of $25,000 general damage award to $17,500 for sixteen-month soft tissue injuries unresolved by trial); Holford v. Allstate Ins. Co., 41,187 (La.App. 2 Cir. 6/28/06), 935 So.2d 758, 763 (general damage award of $25,000 for soft tissue back injury treated for ten months after accident with residual pain caused by aggravation of pre-existing bulging discs); Marcum v. Johnston, 32,634 (La.App. 2 Cir. 1/26/00), 750 So.2d 1186, 1190-91 (award of $5,500 general damages for ten-month neck and lower back soft-tissue injury not resolved at trial).
Assignment of Error 4 — Loss of Consortium
The defendants argue that the district court improperly held that Mr. Lohenis suffered a loss of consortium and would have awarded him damages for such a claim, had the district court not already awarded damages that exceeded the amount available under the defendant’s insurance policy. We note that no damages were awarded for a loss of consortium claim. Although the trial court stated in its reasons for judgment that it would have awarded damages for loss of consortium had the insurance policy not already been maxed out, there is no mention of loss of consortium damages in the final judgment.
A judgment and reasons for judgment are two separate and distinct documents; it is well-settled law that the district court’s oral or written reasons form no part of the judgment. La. C.C.P. art.1918; Burmaster v. Plaquemines Parish Govt., 07-1311 (La.8/31/07), 963 So.2d 378, 379. Appeals are taken from the judgment, not the reasons for judgment. La. C.C.P. arts.2082, 2083; Greater New Orleans Expressway Com’n v. Olivier, 02-2795 (La.11/18/03), 860 So.2d 22, 24. While reasons for judgment are helpful in determining the rationale for a judgment, only the final judgment can be appealed. Hofler v. J.P. Morgan Chase Bank, N.A., 46,047 (La.App. 2 Cir. 1/26/11), 57 So.3d 1128, 1134. This assignment of error is without merit.

DECREE

Based on the foregoing, the April 25, 2014 judgment of the district court which awarded the plaintiff $47,857.50 in damages is hereby amended to $18,267.00. All costs of this appeal are cast equally to the parties.
AMENDED; AFFIRMED, AS AMENDED.

. Ms. Rousse’s insurance policy, Policy No. 57 17602-12-26, was a $100,000 policy, with limits of 50/100.

. Previously, the defendants settled with Mrs. Lohenis for $50,000 and settled with Matthew Lohenis for $2,142.50, leaving a balance of $47,857.50 on the policy. (R. 18/42) Prior to trial, the defendants stipulated to liability. Mr. Lohenis agreed to limit the value of his claim to the remaining amount available under the policy and not pursue a personal claim against the defendant.

. There is no medical evidence in the record from the plaintiff's visits with Dr. Burdine. Mr. Lohenis testified on cross-examination that he visited Dr. Burdine in 2009 and 2010, at which time he received steroid injections. The plaintiff's treating neurosurgeon, Dr. Summers, included Mr. Lohenis's visits with Dr. Burdine in her notes on the plaintiff's medical history.

. Mr. Lohenis testified that he visited Lallie Kemp numerous times prior to his accident for his health problems, including his chronic pain. Plaintiff testified he treated with Dr. Sienski at Lallie Kemp a month prior to the accident for his chronic pain. Mr. Lohenis also testified that he treated at Lallie Kemp for neck and back pain after visiting his primary care physician, Dr. Charles Ducombs. However, the only medical evidence in the record from the plaintiff's visits at Lallie Kemp is a one-page document dated October 2, 2012, listing home medications, specifically his diabetes medications, and his allergy list.

. Dr. Summers testified that Mr. Lohenis had multiple imaging studies done in prior years, although those do not form a part of this record.

. Cervicodynia (cervicalgia) is neck pain. Lumbago is pain in the lumbar (back) region. Attorney’s Illustrated Medical Dictionary, C34, L49 (Ida G. Dox, Gilbert M. Eisner, June L. Melloni, and B. John Melloni, eds., West 1997).

. The dates that Mr. Lohenis attended physical therapy were established in Dr. Summer’s deposition that she gave prior to trial. The only other evidence aside from the plaintiff’s testimony and Dr. Summers deposition that he attended physical therapy is a five-page document from North Oaks Rehabilitation Services, dated February 12, 2013.