STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CA 0083

ROSA BELLE GROS

VERSUS

LAMMICO, TERREBONNE GENERAL MEDICAL CENTER,
ERIC JUKES, M.D., AND KARL GERALD HAYDEL, SR., M.D.

Judgment Rendered: __NOV 1 2 2020__

* * * * *

On Appeal from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Trial Court No. 182,042

Honorable George J. Larke, Jr., Judge Presiding

* * * * *

<table>
<tr><td>Kara H. Samuels<br>Tiffany A. Morales<br>New Orleans, LA<br><br>Willaim A. Stark<br>Houma, LA</td><td>Attorneys for Plaintiff-Appellant,<br>Rosa Belle Gros</td></tr>
<tr><td>John D. Schoonenberg<br>Houma, LA</td><td>Attorney for Defendants-Appellees,<br>LAMMICO, Eric Jukes, M.D., and<br>Karl Gerald Haydel, Sr., M.D.</td></tr>
</table>

* * * * *

BEFORE: HIGGINBOTHAM, THERIOT, AND WOLFE, JJ.

**HIGGINBOTHAM, J.**

This is a medical malpractice case. The plaintiff alleges that two general surgeons acted negligently and breached the standard of care during her hernia repair surgery and post-operative care. A medical review panel and a jury found that the defendant doctors acted within the standard of care and were not negligent in their care of the plaintiff. Consequently, the plaintiff's lawsuit was dismissed. The plaintiff appeals the judgment rendered in accordance with the jury's verdict.

## BACKGROUND

On April 11, 2014, Mrs. Rosa Belle Gros, then 71-years old, underwent hernia repair surgery performed by Dr. Erik Jukes at Terrebonne General Medical Center ("TGMC") in Houma, Louisiana. Mrs. Gros had an extensive history of multiple abdominal surgeries and recurrent small bowel obstructions, including a colostomy repair. The surgery at issue involved the repair of a large incisional hernia in her abdomen. Due to Mrs. Gros's complex surgical history, she had widespread abdominal adhesions that made the hernia repair surgery difficult and time-consuming. She remained hospitalized ten days for post-operative care, where she was followed by Dr. Jukes and his partner, Dr. Karl Gerald Haydel, Sr. Unfortunately, Mrs. Gros's post-operative care was complicated by abdominal pain, nausea, vomiting, shortness of breath, fever, and a slow return of bowel function. An x-ray and CT-scan without contrast were ordered during her ten-day hospitalization. Despite the showing of air bubbles and fluid in Mrs. Gros's abdomen, Drs. Jukes and Haydel continued to treat Mrs. Gros with pain medicine and antibiotics, diet restrictions, and oxygen when needed. On April 21, 2014, Dr. Haydel felt that Mrs. Gros's physical condition had improved enough for her to be discharged to continue her rehabilitation and healing at her home.

Two days later, on April 23, 2014, Mrs. Gros returned to the emergency room at TGMC because she was experiencing extreme abdominal pain and shortness of

breath. A CT-scan with contrast revealed more fluid and air, as well as an apparent bowel leak near the hernia repair mesh site in Mrs. Gros's abdomen. She was admitted to the hospital for another abdominal surgery, which was scheduled for the next day.

On April 24, 2014, Dr. Jukes performed the second surgery and Dr. Haydel assisted. During the surgery, Dr. Jukes discovered a perforation of Mrs. Gros's bowel near the mesh used to repair her incisional hernia. The bowel perforation was repaired, but her abdomen remained open for follow-up surgeries to clean Mrs. Gros's abdomen due to the development of a high output fistula (bowel leak to the skin). The process resulted in critical care and a long-term rehabilitation hospital stay, where Mrs. Gros endured a painful healing process using a wound vac to attempt to close her abdomen. In August 2014, Mrs. Gros consulted another surgeon, Dr. Michael C. Townsend, who eventually performed a complicated reconstructive surgery in order to repair the fistula that had developed and to begin the process of closing Mrs. Gros's abdomen wound. By October 2014, Mrs. Gros's abdomen was healed; however, in 2016, she experienced a recurrent hernia and Dr. Townsend performed another abdominal surgery on Mrs. Gros.

On April 15, 2015, Mrs. Gros filed a complaint with the Louisiana Division of Administration for medical malpractice against Dr. Jukes and Dr. Haydel. After a review of the evidence, on November 29, 2017, the Medical Review Panel ("MRP") unanimously determined that neither doctor was negligent nor did they breach the standard of care in their respective treatments of Mrs. Gros. Subsequent to the MRP's determination, on February 15, 2018, Mrs. Gros filed suit against Dr. Jukes, Dr. Haydel, TGMC, and the doctors' insurer, Louisiana Medical Mutual Insurance Company ("LAMMICO"). A few months later, in July 2018, TGMC was dismissed from the lawsuit after filing a motion for summary judgment, but Mrs.

3

Gros's medical malpractice claims against Dr. Jukes, Dr. Haydel, and LAMMICO proceeded to a five-day jury trial in May 2019.

In presenting her case at trial, Mrs. Gros relied on her own testimony, her daughter's and daughter-in-law's testimony, and the testimony of expert general surgeons, Dr. Townsend and Dr. Thomas J. Esposito. Dr. Townsend's testimony primarily discussed the reconstructive surgery and complications endured by Mrs. Gros. He related all of the treatment given by him to complications from the April 2014 hernia surgery that resulted in a bowel perforation, high output fistula, and an open abdominal wound. However, Dr. Townsend did not testify that Dr. Jukes and/or Dr. Haydel had committed medical malpractice. Instead, Dr. Townsend acknowledged that bowel perforations during hernia surgeries are a common occurrence, especially with dense adhesions from previous surgeries.

Dr. Esposito, a board certified general surgeon, was the only physician to testify that not taking Mrs. Gros back to surgery during her initial hospital stay for her hernia repair was negligent and a breach of the standard of care. Dr. Esposito opined that it was an egregious delay to wait until Mrs. Gros returned to the emergency room on April 23, 2014, before conducting a CT scan with contrast, which showed the bowel perforation. He testified that the failure to rule out a bowel perforation on days three through five of Mrs. Gros's initial post-operative recovery period constituted a breach of the standard of care by Dr. Jukes. Dr. Esposito also stated that Mrs. Gros's discharge on April 21, 2014, by Dr. Haydel, did not meet the standard of care, because she should have undergone more observation and testing before discharge. Dr. Esposito further testified that because Dr. Jukes and Dr. Haydel breached the standards of care in Mrs. Gros's post-operative care, this caused her substantial harm and pain for many months. It was Dr. Esposito's opinion that Mrs. Gros would have had a better outcome and avoided most of her complications

4

had the bowel perforation been discovered and repaired earlier during her initial hospitalization.

For their case, the defendant doctors relied on their own testimony as experts in general surgery, as well as the expert testimony of each member of the MRP, Dr. Kelvin Contreary, Dr. Neil Patrick Lyons, and Dr. John J. Walsh, Jr., who are all board-certified general surgeons. The MRP members consistently testified that Dr. Jukes and Dr. Haydel did not deviate from the standard of care during the initial hernia repair surgery or the follow-up management of her care post-operatively. Each doctor stated that while Mrs. Gros exhibited some signs and symptoms of a bowel perforation, such as pain, fever, abdominal distention, edema (swelling), nausea, and vomiting, her clinical picture as a whole did not clearly indicate a bowel perforation that would necessitate another surgery during her initial hospitalization. Each physician discussed the ways that bowel perforations are diagnosed through physical examinations, lab studies, and imaging studies like CT scans with and without contrast. The doctors agreed that a bowel perforation would be on the differential diagnosis[1] list, along with a bowel ileus (paralysis of the bowel) or an obstruction of the bowel. All of the MRP doctors testified that a horrible outcome such as a bowel perforation and fistula did not necessarily indicate medical malpractice.

Dr. Jukes testified at trial that he is a board certified general surgeon, and had been employed with Southern Louisiana Medical Association ("SLMA") since 2018. Before then, he was employed at Haydel Surgical Clinic for seven years. He has hospital privileges at TGMC, where he routinely repairs hernias. He first saw Mrs. Gros at the Clinic about one week before her April 11, 2014 hernia repair surgery. Mrs. Gros's medical history included at least eight previous abdominal

---

[1] Physians utilize a procedure called "differential diagnosis" to analyze the possible causes of a patient's signs and symptoms, eliminating the most serious or life-threatening illnesses first.

surgeries. Mrs. Gros's hernia was about the size of a softball. He spent approximately thirty minutes removing scar tissue (technically called lysing adhesions) that was stuck to the abdominal wall before reaching the hernia. He used a 5 inch by 7-8 inch piece of biological (pig skin) mesh to repair the hernia hole. Dr. Jukes stated that Mrs. Gros's surgery was tedious and difficult due to her scar tissue/adhesions; he also acknowledged that Mrs. Gros's surgery was painful due to the big stitches that were tied tightly to make the abdominal wall stronger. Dr. Jukes testified that bowel perforations are frequent occurrences in abdominal surgeries, and that is what happened in Mrs. Gros's case, probably when he was snipping the adhesions.

Dr. Jukes believed that Mrs. Gros tolerated the hour and a half surgery well. He did not see any holes in the bowel before he finished Mrs. Gros's surgery. His operative report indicates that he inspected Mrs. Gros's abdomen and washed it out completely, and he did not see any green fluid or abnormal blood. Mrs. Gros had a history of a compromised pulmonary function that required her use of oxygen on some days during her post-operative care. On post-operative day three, he ordered an abdominal x-ray because Mrs. Gros was not progressing like he thought she should. Her abdomen was distended. Dr. Jukes thought that Mrs. Gros was suffering from a bowel ileus. The x-ray revealed air in Mrs. Gros's abdomen. Dr. Jukes stated that 40 percent of patients will have air in their abdomens after this type of surgery. The x-ray report suggested a CT scan should be ordered, if clinically indicated. Dr. Jukes explained that this allows the physician to make a clinical determination about the necessary follow-up care. Dr. Jukes thought that Mrs. Gros's clinical condition was typical for someone who had just undergone a difficult surgery.

During Mrs. Gros's ten-day hospitalization after the surgery, Dr. Jukes's partner, Dr. Haydel, followed Mrs. Gros's case for several days. Dr. Haydel ordered a CT scan without contrast on post-operative day four. Dr. Jukes read the CT scan

report, which he found concerning. However, when Dr. Jukes saw Mrs. Gros the next day, her pain level had markedly decreased. Therefore, Dr. Jukes did not order a follow-up CT scan at that time. He was under the impression that Mrs. Gros was improving by post-operative day seven. At that point, a bowel perforation was very low on Dr. Jukes differential diagnosis list, and he believed that Mrs. Gros was suffering from post-operative bowel ileus. He would have ordered more scans if it had been clinically indicated. Dr. Jukes stated that the fluid build-up showing on the scans was near the drain from Mrs. Gros's surgery, not inside the abdominal wall. He started Mrs. Gros on a round of antibiotics to help her in case she was developing an abscess or an infection.

Dr. Haydel testified that he is a board-qualified general surgeon, who started practicing medicine in 1962. He stated that he had performed thousands of hernia repair surgeries. He and Dr. Jukes often did rounds for each other because they were in practice together at the Haydel Surgical Clinic in 2014. They would communicate with each other about the status of each other's cases. Dr. Haydel testified that most hernia patients have pain and distended abdomens for several days after surgery. Dr. Haydel ordered a CT scan on post-operative day four because a possible bowel perforation was on his differential diagnosis list, along with abscess, peritonitis, ischemic bowel, or twisted bowel. Dr. Haydel stated that physicians must physically examine their patients and not just rely on tests or scans. He insisted that if he thought that Mrs. Gros absolutely needed more surgery when he was following her in the hospital, he would have notified Dr. Jukes. When he discharged Mrs. Gros from the hospital after her initial hernia repair surgery, he noted that she had a long course of post-operative ileus, but was doing well, passing flatus (gas), her abdomen was soft, and the incision appeared to be healing well. Mrs. Gros was sent home, followed on an outpatient basis, with pain medicine to be taken at home.

When Mrs. Gros returned to the emergency room on April 23, 2014, Dr. Jukes thought it was reasonable to admit her for antibiotics, observation, and a CT scan with contrast. Because the scan showed slightly more free air, he believed that indicated a perforation in the bowel even though he did not see free fluid or a leaking bowel on the original CT scan. The scan did reveal a tiny amount of contrast leaking out of a hole in the small intestine or stomach. That is when he decided Mrs. Gros needed more surgery. Dr. Jukes testified that it was within the standard of care to delay the surgery 24 hours after Mrs. Gros returned to the hospital. He was adamant that he would have taken Mrs. Gros back to surgery during her initial hospital stay if he thought that it was necessary. Dr. Jukes also believed that Mrs. Gros would have had the same outcome if he had taken her back to surgery earlier. Dr. Jukes followed Mrs. Gros's second post-operative care period until she was discharged to long-term acute care, which typically takes four-to-six months, sometimes longer. Mrs. Gros had an adverse surgical outcome that was long and terrible. Dr. Jukes stated that he would have done anything to fix the problem quicker, but he explained that it is just a long process.

The trial concluded with the jury reaching a verdict in favor of Dr. Jukes and Dr. Haydel. The trial court issued a final judgment on June 13, 2019, in accordance with the jury's verdict. It is from this judgment that Mrs. Gros appeals, raising nine assignments of error. Two assigned errors relate to the MRP members' cumulative testimony and a perceived conflict with one member of the MRP. One alleged error involves a **Batson/Edmonson** *voir dire* challenge. Three designated errors concern the trial court's discretionary evidentiary rulings during the trial. Two alleged errors regard the trial court's jury instructions. The final assigned error insists that the jury verdict was manifestly erroneous.

## STANDARD OF REVIEW

The Louisiana Medical Malpractice Act ("LMMA") provides that the plaintiff in a medical malpractice action must establish by a preponderance of the evidence: (1) the standard of care applicable to the defendant physician; (2) the defendant physician breached the applicable standard of care; and (3) there was a causal connection between the breach and the resulting injury. See La. R.S. 9:2794(A); **Schultz v. Guoth**, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006; **Patterson v. Peterson**, 2019-1604 (La. App. 1st Cir. 8/3/20), ___ So.3d ___, ___, 2020 WL 4435278, *2. In order to meet this burden, the plaintiff is generally required to produce expert medical testimony. **Boudreaux v. Mid-Continent Cas. Co.**, 2005-2453 (La. App. 1st Cir. 11/3/06), 950 So.2d 839, 844, writ denied, 2006-2775 (La. 1/26/07), 948 So.2d 171. Moreover, the resolution of whether the alleged malpractice constitutes negligence as well as the assessment of factual conflicts, including those involving the contradictory testimony of expert witnesses, falls within the province of the trier of fact. **McGlothlin v. Christus St. Patrick Hosp.**, 2010-2775 (La. 7/1/11), 65 So.3d 1218, 1232.

A physician is not held to a standard of absolute precision; rather, his conduct and judgment are evaluated in terms of reasonableness under the circumstances existing when his professional judgment was exercised, and not on the basis of hindsight or in light of subsequent events. **Johnston ex rel. Johnston v. St. Francis Medical Center, Inc.**, 35,236 (La. App. 2d Cir. 10/31/01), 799 So.2d 671, 675. In a medical malpractice action, opinions of expert witnesses who are members of the medical profession are necessary to determine whether the defendant physician possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. **Id.**

The jury was the trier of fact in this case. It was for the jury to evaluate conflicting expert opinions in relation to all the circumstances of the case. **Johnston**, 799 So.2d at 675. The conclusions of the jury may not be set aside on appeal in the absence of manifest error. **Stobart v. State through Dept. of Transp. and Development**, 617 So.2d 880, 882 (La. 1993). Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable factual basis exists for the jury's findings, and (2) the appellate court determines that the record establishes that the findings are clearly wrong or manifestly erroneous. **Id.** Where there are two permissible views of the evidence, the jury's choice between them cannot be manifestly erroneous. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). The issue to be resolved on review is not whether the jury was right or wrong, but whether the jury's fact-finding conclusion was a reasonable one. **Stobart**, 617 So.2d at 882. An appellate court on review must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. **Rosell**, 549 So.2d at 844.

## DISCUSSION OF ASSIGNED ERRORS

Trial Court's Rulings Regarding the MRP

Mrs. Gros's first two assignments of error involve rulings made by the trial court related to the MRP. Mrs. Gros contends that the trial court erred in failing to strike the MRP and by not ordering the reconvening of a new MRP. The basis of this argument is that one of the MRP members, Dr. Lyons, failed to disclose a business or financial relationship with TGMC and Dr. Haydel's clinic, where Dr. Jukes also practiced medicine. Mrs. Gros filed a pre-trial motion to strike the MRP based upon the alleged undisclosed conflict of interest. The trial court denied the motion, finding that at the time that Dr. Lyons was appointed to serve on the MRP in October 2016 and when the MRP opinion was rendered in November 2017, there was no business or financial relationship between Dr. Lyons and/or Dr. Jukes and

10

Dr. Haydel. All three doctors had privileges at TGMC in 2015, but Dr. Lyons did not take any calls or do rounds on any of Dr. Jukes's or Dr. Haydel's patients until 2018. Dr. Lyons began working for SLMA in 2015, after he finished his residency in general surgery. Dr. Jukes and Dr. Haydel joined SLMA in 2018, after the MRP opinion was rendered in November 2017. Thus, the defendant physicians argued that Mrs. Gros produced no evidence of Dr. Lyons's alleged failure to disclose a relationship that might give rise to a conflict that would be grounds to disqualify Dr. Lyons from serving on the MRP or the need to reconvene a new MRP.

A MRP's sole duty is to review all of the evidence and express its expert opinion as to whether or not the evidence supports the conclusion that the defendant physicians acted or failed to act within the appropriate standards of care. See La. R.S. 40:1231.8(G). Any report of the MRP's expert opinion "shall be admissible as evidence in any action subsequently brought by the claimant in a court of law." La. R.S. 40:1231.8(H). Such expert opinion "shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness." **Id.** Hence, the weight of the findings of the MRP is subject to credibility determinations, which are to be made by the jury. See **Ortego v. Jurgelsky**, 98-1622 (La. App. 3d Cir. 3/31/99), 732 So.2d 683, 689.

Mrs. Gros did not file her motion to strike the MRP opinion until two months before trial and her motion to strike cumulative testimony of the defense experts was filed right before trial. After exploring the conflict issue, the trial court determined that no disqualifying conflict existed. We find no abuse of the trial court's discretion in this conclusion. The existence of an employment, financial or other relationship giving rise to a conflict of interest does not require an automatic disqualification of the MRP member's service. The trial court has vast discretion in finding whether a conflict of interest exists that could be highly biased and prejudicially influence the MRP's opinion. **Elledge v. Williamson**, 48,644 (La. App. 2d Cir. 1/15/14), 132

11

So.3d 432, 437-438. On this record, we do not find a violation of that discretion. Furthermore, in the absence of any allegations that the MRP superceded its statutory authority, the MRP's opinion is subject to mandatory admission. La. R.S. 40:1231.8(H). See also **McGlothlin v. Christus St. Patrick Hosp.**, 2010-2775 (La. 7/1/11), 65 So.3d 1218, 1229-1230. Mrs. Gros had an opportunity to explore any potential bias on the part of Dr. Lyons through cross-examination, and the jury assigned the weight of the MRP opinion in light of such testimony. See **Sanderson v. Tulane University Hospital and Clinic**, 2018-0588 (La. 6/15/18), 245 So.3d 1043 (per curiam). Accordingly, we find the trial court did not abuse its discretion in refusing to remove Dr. Lyons from the MRP and reconstitute a new MRP.

As for Mrs. Gros's contention that the trial court erred in allowing the testimony of all members of the MRP because the testimony was cumulative and caused her prejudice, we disagree. Any MRP member may be called as a witness by either party at trial. See La. R.S. 40:1231.8(H); **Duchmann v. Logarbo**, 2015-1012 (La. App. 1st Cir. 2/24/16), 2016 WL 758997, *7 (unpublished). Furthermore, all MRP members must sign an oath of impartiality. La. R.S. 40:1231.8(C)(5)(a). Considering there were two years between the rendition of the MRP opinion and the trial in this matter, Mrs. Gros had ample opportunity to discover the MRP members' opinions prior to trial and she had the opportunity to cross-examine each of the MRP members at trial. We find no abuse of discretion in the trial court's decision to allow all of the MRP members to testify at trial as expert witnesses. Furthermore, the provisions of the LMMA do not restrict the testimony of the MRP members once they have been discharged and the MRP's opinion has been rendered. **Medine v. Roniger**, 2003-3436 (La. 7/2/04), 879 So.2d 706, 713. Accordingly, we find no error in allowing all of the MRP members to testify at trial.

## Batson/Edmonson *Voir Dire* Challenge

Mrs. Gros maintains that the trial court erred in overruling her **Batson/Edmonson**[2] *voir dire* challenge concerning the striking of two African-American women as potential jurors. The basis of Mrs. Gros's objection during *voir dire* was a pattern of two strikes in a row by the defendants that were allegedly gender and racially motivated since both involved African-American women. The defendants responded with race-neutral reasons, that during *voir dire* potential juror, Barbara King, had indicated she had a hardship issue because she babysits her grandchildren, and potential juror, Keyoka Patterson, also had a hardship issue in that she works three jobs, is sole caretaker for her four children, and her husband is incarcerated. The defendants had previously challenged Keyoka Patterson for cause, but the trial court denied the challenge. The defendants indicated that Mrs. Gros had not shown a pattern of excluding African-Americans, because they had accepted an African-American man, Joseph Parker. Furthermore, the jury was made up of ten women and four men (counting the two alternates). Over Mrs. Gros's objection, the trial court ruled there was no pattern of race or gender discrimination.

A **Batson/Edmonson** challenge to a peremptory strike requires a three-step inquiry by the trial court: (1) has a *prima facie* showing been made that the peremptory challenges were made on the basis of race or another protected group; (2) if so, has the challenging party presented a neutral explanation for striking the potential jurors; and (3) does the weight and credibility of the neutral explanation

---

[2] **Batson v. Kentucky**, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and **Edmonson v. Leesville Concrete Co., Inc.**, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), generally hold that peremptory strikes of potential jurors cannot be based on race in criminal or civil trials. Louisiana jurisprudence extends the prohibition to any pattern of discrimination, including gender. See **State v. Duncan**, 99-2615 (La. 10/16/01), 802 So.2d 533, 543.

present a persuasive justification for the strike or is the explanation a pretext for purposeful discrimination. See **Alex v. Rayne Concrete Service**, 2005-1457 (La. 1/26/07), 951 So.2d 138, 150-151. The trial court's conclusion on the ultimate issue of discriminatory intent is a finding of fact that is accorded great deference on appeal. **Lee v. Magnolia Garden Apartments**, 96-1328 (La. App. 1st Cir. 5/9/97), 694 So.2d 1142, 1147, writ denied, 97-1544 (La. 9/26/97), 701 So.2d 990.

Our review of the *voir dire* transcript reveals that both of the African-American women that were peremptorily challenged by the defendants had indicated real hardship issues that could have been distracting to them if they were chosen to serve on the jury. There is no pattern of purposeful race or gender discrimination in the challenges exercised against those prospective jurors. Giving the great deference that we must give to the trial court's factual findings and credibility determinations, we cannot say that the trial court committed manifest error or an abuse of its discretion in its ultimate decision to allow the peremptory challenges of the two prospective jurors. See **Lee**, 694 So.2d at 1147. This assignment of error lacks merit.

Objections to Trial Court's Evidentiary and Expert Witness Rulings

Mrs. Gros argues that the trial court improperly overruled an objection that she made when one of the MRP members, Dr. Contreary, stated that the MRP "sit[s] in judgment of the case." Mrs. Gros maintains the jury was led to believe that the MRP had already adjudicated her malpractice claim rather than rendered an advisory expert opinion. After Mrs. Gros objected to Dr. Contreary's statement, the trial court overruled the objection and stated that it would instruct the jury about the MRP process. Mrs. Gros did not request a cautionary instruction at the time that the objection was made or when it was overruled. The trial court later gave the jury

14

instructions on the role of the MRP.[3] The record does not reveal an error on the part

of the trial court. If there was error, it was harmless because the trial court properly

instructed the jury before deliberations. The trial court is granted broad discretion

in its evidentiary rulings and on expert testimony. Those rulings will not be

disturbed on appeal absent a clear abuse of discretion. See **Fontana v. Louisiana**

**Sheriffs' Automobile Risk Program**, 96-1579 (La. App. 1st Cir. 6/20/97), 697

So.2d 1030, 1034, writ denied, 97-2363 (La. 1/9/98), 705 So.2d 1088. Considering

the jury instructions on the proper role of the MRP in medical malpractice cases, we

find no abuse of the trial court's discretion.

Additionally, Mrs. Gros complains that Dr. Jukes and Dr. Haydel were each

allowed to testify as experts, but they had not been disclosed as such prior to trial.

Mrs. Gros avers that Dr. Jukes and Dr. Haydel offered speculative testimony. She

claims that this prejudiced her as well. She also asserts she was prejudiced because

Dr. Jukes provided a new opinion at trial without disclosing it prior to trial.

Conversely, the defendant doctors argue that the trial court did not abuse its

discretion in allowing them to offer expert testimony at trial, because they were listed

as witnesses on the pretrial order, and they were both deposed and questioned about

their expertise prior to trial and during trial. Further, the defendant doctors urge that

they are allowed to offer expert testimony in their own defense. They also maintain

that Mrs. Gros cannot claim prejudicial surprise by Dr. Jukes's testimony at trial

because she did not depose Dr. Jukes after she filed her lawsuit, rather she only

deposed him in connection with the MRP process. At the time Dr. Jukes was

---

[3] When the trial court instructed the jury regarding the MRP, it properly stated:

> The [MRP] shall have the sole duty to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant-physician acted or failed to act without the appropriate standards of care. ... The opinion of the [MRP] has been admitted into evidence in this case but is not conclusive as to your opinion about any lack of care on the part of the defendants. You may consider it along with all the other evidence in the case on this issue.

15

deposed, he was not questioned about his reasons for the delay in taking Mrs. Gros back to surgery. At trial, he was questioned about that subject. Thus, the defendant doctors maintain that Dr. Jukes did not offer any new theories or opinions at trial. Furthermore, the defendant doctors insist that their testimony was not speculative, but was supported by the medical records.

Dr. Jukes and Dr. Haydel are both experienced and board certified and/or qualified general surgeons. They were subject to lengthy cross-examination at trial. The trial court has much discretion in conducting a trial and is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. See La. Code Civ. P. art. 1631. The theories inherent in the pre-trial procedure, to avoid surprise and allow orderly disposition of the case, constitute sufficient reasons for allowing the trial court to require adherence to the pre-trial order. **Combs v. Hartford Ins. Co.**, 544 So.2d 583, 586 (La. App. 1st Cir.), writ denied, 550 So.2d 630 (La. 1989). Our review of the record reveals no abuse of discretion in the trial court's disposition of the trial.

In a medical malpractice case, a defendant doctor may offer his own expert testimony regarding causation. See **Pfiffner v. Correa**, 94-0924 (La. 10/17/94), 643 So.2d 1228, 1235. Moreover, a trial court has wide discretion in determining whether to allow a witness to testify as an expert, and that discretion includes a determination of how much and what kind of education and/or training adequately qualifies an individual as an expert. **Keener v. Mid-Continent Cas.**, 2001-1357 (La. App. 5th Cir. 4/30/02), 817 So.2d 347, 353, writ denied, 2002-1498 (La. 9/20/02), 825 So.2d 1175. The trial court's ruling as to expert witnesses will not be disturbed by an appellate court unless it is clearly erroneous or an abuse of the trial court's vast discretion. **Maddox v. Bailey**, 2013-0564 (La. App. 1st Cir. 5/19/14), 146 So.3d 590, 594. The trial court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. **Keener**, 817

16

So.2d at 354. As with all other admissible evidence, expert testimony is subject to being tested by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." **Id.** at 354-355 (citing **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 596, 113 S.Ct. 2786, 2798, 125 L.Ed. 469 (1993)). Considering the trial court's vast discretion and a lack of prejudice shown by Mrs. Gros, these assignments of error regarding the trial court's evidentiary and expert witness rulings lack merit.

Objections Involving Jury Instructions

Mrs. Gros raises two assignments of error regarding the trial court's jury instructions. She first argues that the jury instructions were unbalanced and misleading. Mrs. Gros also insists that the trial court misstated her burden of proof on the lost chance of a better recovery if the malpractice had not occurred. The defendant doctors maintain that the trial court is under no obligation to give the precise jury instructions submitted by either party. Louisiana Code of Civil Procedure article 1792(B) requires the trial court to instruct jurors on the law applicable to the cause submitted to them. Under Louisiana law, "an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions." **Adams v. Rhodia, Inc.**, 2007-2110 (La. 05/21/08), 983 So.2d 798, 804. Because trial courts are vested with broad discretion in formulating jury instructions, a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. **Id.** However, when a trial court erroneously instructs the jury and the error "probably contributed to the verdict," an appellate court must reverse the verdict. **Id.** The seminal question is whether the jury instructions misled the jury to the extent that it was unable to dispense justice. **Id.** Because the adequacy of the jury instruction must be determined in the light of jury instructions as a whole, when small portions of the instructions are isolated from the context and are erroneous, error is not necessarily prejudicial. Furthermore, the

manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts. **Id.**, at 804-805.

The loss of a chance of a better recovery must be proven by a preponderance of the evidence, as in any tort case. **Pesses v. Angelica**, 2014-336 (La. App. 5th Cir. 11/25/14), 165 So.3d 131, 137, <u>writ denied</u>, 2014-2713 (La. 3/27/15), 162 So.3d 386. The jury instruction at issue was stated as follows:

> In this case, plaintiff claims that defendant[s'] substandard conduct played a part in bringing about the plaintiff's injuries. Alternatively, plaintiffs [sic] claim[s] that *defendants' substandard conduct resulted in a loss of plaintiff's chance of a good outcome. The loss of or reduction of a chance of full and complete recovery is a separate and distinct compensable injury*, distinguishable from other damages.
>
> Once a breach of duty constituting malpractice is established, the question of whether the malpractice has lessened the chance of a full recovery to the plaintiff is a question of fact for the jury. The *plaintiff need not prove that the patient would have fully recovered if properly treated, but that she had a chance to fully recover.*
>
> Thus, the plaintiff must establish by a preponderance of the evidence that:
>
> (1)... plaintiff had a chance of full recovery at the time of the defendant[s'] substandard conduct, and
>
> (2)... the defendants' substandard conduct deprived plaintiff of all or part of that chance.

(Emphasis added.)

We do not find the instruction on lost chance of recovery to have been misleading or unbalanced. Even if the instruction put an emphasis on the lost chance of a *full* recovery, we find that to be harmless error since the jury ultimately found that the defendant doctors' conduct did not constitute malpractice or negligence. Thus, the jury never actually reached the question of Mrs. Gros's lost chance of recovery or a good outcome. Looking at the jury instruction as a whole, we find no

18

prejudicial error. The assignments of error regarding the jury instruction are without merit.

The Jury's Verdict

In her final assignment of error, Mrs. Gros asserts that the trial court's judgment based on the jury's verdict was manifestly erroneous. She claims that because every doctor except Dr. Jukes had perforated bowel on their differential diagnosis list, the jury was clearly wrong in finding that he had not breached the standard of care. The defendant doctors argue that the record does not support Mrs. Gros's contention.

A possible bowel perforation was on Dr. Haydel's mind as early as four days after Mrs. Gros's hernia repair surgery. Dr. Haydel consulted with Dr. Jukes regarding Mrs. Gros's condition each day that he followed her post-operative care. Dr. Jukes ordered an x-ray on post-operative day three, and he felt that the results were consistent with a very difficult hernia repair surgery. Dr. Haydel ordered a CT scan without contrast on post-operative day four. Dr. Jukes read the CT scan results and thought it was concerning, but did not match Mrs. Gros's clinical picture. Dr. Jukes prescribed antibiotics after reading the CT scan results. He did so because an abscess or bowel perforation was on his differential diagnosis list, but if there had been a bowel injury Dr. Jukes stated that much more fluid would have been present on the scan. By post-operative day eight, Mrs. Gros's abdominal pain was improving and he did not believe a follow up CT scan was needed at that point. Dr. Jukes testified that a bowel perforation was very low on his differential diagnosis list since Mrs. Gros's condition was improving, even though she still reported having pain. When Mrs. Gros returned to the hospital two days after discharge, Dr. Jukes stated that Mrs. Gros's pain was above her incision area. He ordered a CT scan with contrast, saw more air in the abdomen and a small amount of contrast fluid near the

19

mesh used for the hernia repair, and immediately scheduled Mrs. Gros for another abdominal surgery to explore the area for a bowel perforation and repair it if found.

Dr. Esposito was the only doctor who testified that the delay in taking Mrs. Gros back to surgery during her initial post-operative hospital stay was a breach of the standard of care. He stated that Mrs. Gros's symptoms – fever, fast heart rate, elevated white blood cell count, nausea, vomiting, and ileus – are all symptoms of a bowel perforation. Dr. Esposito acknowledged that Mrs. Gros's hernia repair surgery was complex due to her extensive adhesions from multiple previous abdominal surgeries, and the surgery would commonly cause a bowel ileus. He also testified that pain and nausea would be expected. However, when the x-ray ordered on post-operative day three revealed some air bubbles and fluid in the right upper abdomen, that is a cause for concern, according to Dr. Esposito. When the CT scan without contrast revealed more of the same, Dr. Esposito opined that it was too much air and fluid at that point in Mrs. Gros's post-op recovery.

Dr. Esposito stated that observation is a credible method of follow-up, but there should have been a high level of suspicion for a bowel abscess or perforation. He testified that a follow-up CT scan should have been done a few days later to ensure that there was less air and fluid in Mrs. Gros's abdomen. If she was not improving, then Dr. Esposito opined that she should have gone back to surgery. Dr. Esposito stated that on the day of Mrs. Gros's discharge after her initial surgery, her vital signs were not overwhelmingly abnormal. However, he insisted that Mrs. Gros's signs and symptoms pointed to a bowel perforation that was not diagnosed during her initial post-operative care. He stated that the delay in discovering the bowel perforation was egregious, and that Dr. Jukes and Dr. Haydel breached the standards of care, which caused Mrs. Gros harm.

Every other doctor testified that Dr. Jukes and Dr. Haydel reasonably treated Mrs. Gros and there was no breach of the standards of care. All of the doctors agreed

20

that it was a complicated surgery and they all testified that bowel perforations can happen without fault. The MRP doctors, along with Dr. Jukes and Dr. Haydel, all indicated that the delay in taking Mrs. Gros back to surgery was a reasonable clinical judgment that was within the acceptable standards of care.

Medical specialists such as general physicians and surgeons are held to a uniform standard of care based upon national standards existing within the specialty, as codified in La. R.S. 9:2794. **Mantiply v. Hoffman**, 2018-292 (La. App. 3d Cir. 1/16/19), 263 So.3d 1193, 1201, <u>writ denied</u>, 2019-0588 (La. 6/3/19), 272 So.3d 544. The jurisprudence of this state confirms that general physicians and surgeons are not required to exercise the highest degree of care possible. The duty is to exercise the degree of skill ordinarily employed by professional peers under similar circumstances. **Matthews v. Louisiana State Univ. Med. Ctr. in Shreveport**, 467 So.2d 1238, 1241 (La. App. 2d Cir. 1985). The physician and surgeon must use reasonable care along with his best judgment in the exercise of that skill. **Id.** Furthermore, the law does not require absolute precision in medical diagnoses. Acts of professional judgment are evaluated in terms of reasonableness under the circumstances then existing, not in terms of result or in the light of subsequent events. It is not malpractice to simply miss a diagnosis. **Id.**

The record reveals no manifest error in the jury finding in favor of the defendant doctors. The jury evaluated the conflicting expert opinions as to whether Dr. Jukes and Dr. Haydel breached the standard of care in this case. It is for the jury to evaluate conflicting expert opinions in relation to *all* the circumstances of the case. **Johnston**, 799 So.2d at 675. Only one expert, Dr. Esposito, unequivocally testified that the defendant doctors breached the standard of care. The preponderance of the evidence was that no breach in the standard of care occurred. While the benefit of hindsight allows the experts to see clearly that Mrs. Gros was suffering from a bowel perforation after her hernia repair surgery, hindsight cannot

21

form the basis for evaluating the conduct and judgment of the treating physicians at the time their professional judgment was exercised. **Id.** at 680. Our review of the record shows a reasonable factual basis for the jury's finding in favor of the defendant doctors. In fact, there was ample testimony to support the jury's conclusion. Thus, the jury's verdict and the trial court's judgment rendered in accordance with that verdict was not manifestly erroneous. This assignment of error is without merit.

## CONCLUSION

For the reasons expressed, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiff-appellant, Rosa Belle Gros.

**AFFIRMED.**